**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Crim. No. 21-140 (JDB)** |
| **LARRY RENDALL BROCK,** | |
| **Defendant.** | |

**<u>ORDER</u>**

Larry Rendall Brock is charged via information with six misdemeanor offenses stemming from his participation in the events at the United States Capitol on January 6, 2021.  Brock now seeks to modify his pretrial release conditions to allow him to travel freely within the state of Texas and to access the internet.  The government objects to both requests.  For the following reasons, the Court will loosen the current restrictions on Brock's internet access to prohibit only social media use but maintain the limitations on his travel at this time.

Video footage depicts Brock on the floor of the U.S. Senate Chamber and outside U.S. House Speaker Nancy Pelosi's office on the afternoon of January 6, 2021.  <u>See</u> Aff. in Supp. of Crim. Compl. & Arrest Warrant [ECF No. 1-1] at 4–6.  The government does not allege that Brock acted violently or destroyed any federal property inside the Capitol building, but he is shown on camera in a "military-style helmet, tactical vest, and holding flex-cuffs in his right hand."  <u>Id.</u> at 4.  The government also alleges that Brock, who is a "veteran of the Air Force with multiple combat deployments," <u>see</u> Def.'s Mot. to Modify Conditions of Release ("Def.'s Mot.") [ECF No. 11] at 1, posted a number of violent messages on Facebook in the lead-up to January 6 and the day after, <u>see</u> Gov't Resp. to Def.'s Mot. to Modify Conditions of Release ("Gov't Opp'n") [ECF No. 12] at 2–4.  Those messages, <u>inter alia</u>, made reference to "the civil war that is coming," indicated that

"[f]ire and blood will be needed soon," and warned that "[t]he castle will be stormed."  See id. at 3.  On January 6, Brock allegedly posted that "[p]atriots [are] on the Capitol" and that "[m]en with guns need to shoot there [sic] way in."  Id.

Following his arrest on January 10, 2021, Brock appeared before Magistrate Judge Jeffrey L. Cureton in the Northern District of Texas and was temporarily detained at the government's request.  See Rule 5(c)(3) Docs. [ECF No. 5] at 3.  A full detention hearing was held on January 14, and Judge Cureton ordered Brock released pending trial subject to several conditions.  Those conditions dictate, inter alia, that Brock (1) must remain in "[his] residence at all times except for employment, education . . . or other activities approved in advance by" the Pretrial Services Agency ("PSA"); (2) cannot travel outside the Northern District of Texas, except with pre-approval from PSA or for court purposes; (3) "submit to location monitoring as directed by" PSA; and (4) not "access the internet except for participation in online classes [in] which he is enrolled" or as "specifically approved" by PSA.  See id. at 17.

Brock filed a motion to modify his release conditions on March 15, 2021, arguing that "[m]aintaining [him] on home detention and limiting his internet use is more restrictive than necessary."  Def.'s Mot. at 2.  He states that he is actively seeking a new job as "a home inspector and/or flight instructor," and that "[p]ursuing these careers will require significant local travel which will likely be burdensome to coordinate ahead of time with [PSA]."  Id.  For this reason, he requests authorization to travel within the state of Texas without pre-approval from PSA.  He also contends that it is too onerous to seek PSA's permission for every online task he must perform to go about his daily life and to obtain a job, and that a prohibition on social media use would be sufficient to allay any safety concerns.  Id. at 2–3.  The government objects to Brock's motion, arguing that his "employment status has not changed since" his original detention hearing, "nor

has [his] affirmatively stated need to get on the internet."  Gov't's Opp'n at 5.

The Bail Reform Act requires that a defendant on pretrial release shall be subject to "the least restrictive" set of conditions that will reasonably assure his appearance and the safety of the community.  See 18 U.S.C. § 3142(c)(1)(B).  And the court may "at any time amend [an] order [setting conditions of release] to impose additional or different conditions."  Id. § 3142(c)(3).

The Court will examine the internet restriction first.  Brock's violent posts on Facebook are deeply disquieting, to say the least, and generate public safety concerns.  But the government has not explained why a near-complete ban on internet use—as opposed to only social media use— is necessary to assure Brock's appearance at future court proceedings or the safety of the community.  And the Court agrees that seeking pre-approval from PSA to complete every online task is arduous, particularly given that Brock has also been ordered, as part of his release conditions, to "continue or actively seek employment."  Rule 5(c)(3) Docs. at 18.

The government's sole justification for maintaining the current ban is that limiting only Brock's social media use is not feasible, in part because he has not explained if adequate internet monitoring "software exists" or is available through PSA.  See Gov't's Opp'n at 4–5.  But Brock has noted that PSA already "installed monitoring software on [his] devices," see Def.'s Mot. at 2, which is in fact a condition of his release, see Rule 5(c)(3) Docs. at 18 (requiring that Brock submit to "internet monitoring by the US Probation Officer").  And, although Magistrate Judge Cureton expressed feasibility concerns at Brock's detention hearing, judges in this District have since released other defendants charged in connection with the January 6 events on conditions that limit only their social media access.  See, e.g., Order (Mar. 10, 2021) [ECF No. 25-1], United States v. Cua, 21-CR-107-RMM, at 3 (D.D.C.) (Moss, J.) ("Defendant may not use any social media . . . on any electronic device. . . . Defendant must permit [Probation] to monitor his compliance with this

condition."); Order (Feb. 16, 2021) [ECF No. 16], United States v. Sullivan, 21-CR-78-EGS, at 2 (D.D.C.) ("Defendant to comply with . . . Computer and Internet Monitoring Program Agreement under [Pretrial Services] Computer and Internet Monitoring Program . . . . Defendant is prohibited from using any social media platform to incite a riot, promote or organize a violent or unlawful protest, armed conflict, or violence.").  PSA has also confirmed that pretrial officers in the Northern District of Texas, where Brock resides, have the requisite technology to monitor Brock's social media use.

A ban on all internet use may be justified in certain cases.  But the government has not identified any concerns about allowing Brock access to websites that do not involve social media, nor has the government proffered any reason to believe that Brock would not continue to comply with internet monitoring by PSA.  Hence, the Court will modify Brock's conditions of release to restrict only his access to social media platforms.  As before, he must permit PSA to monitor his compliance with this condition, including through the use of internet monitoring software.  Furthermore, although the restricted list of platforms will include YouTube, Brock may visit YouTube for the limited purpose of viewing educational material relating to his new career as a home inspector, as he requests.  See Def.'s Mot. at 3.  Posting or otherwise interacting with other users on YouTube, however, is strictly prohibited.  Brock also remains restricted from contacting—including through the internet—anyone "involved" in the events at the U.S. Capitol on January 6 or in any protest.  See Rule 5(c)(3) Docs. at 17.

Turning to the restrictions on Brock's travel, the Court does not find that any modification is appropriate at this time.  Brock asks this Court to "remove him from house arrest and instead order tha[t] any travel outside of Texas be approved by" PSA.  Def.'s Mot. at 3.  But the sole justification for this modification is that pursuing a career as a "home inspector and/or flight

instructor" "will require significant local travel which will likely be burdensome to coordinate ahead of time with pretrial." Id.  At most, that might counsel in favor of allowing Brock to travel throughout the state of Texas for employment-related purposes without pre-approval from PSA.

Magistrate Judge Cureton originally fashioned Brock's conditions of release to mitigate both flight risk and public safety concerns.  See Def.'s Mot. Ex. 1 [ECF 11-1] at 1.  Brock's motion does not challenge Judge Cureton's findings or present any new evidence—aside from Brock's compliance with his release conditions thus far—for this Court to consider.  The Court, therefore, fails to see how removing Brock from home detention entirely is warranted solely based on his limited need to travel within the state of Texas to obtain or perform a new job.

For its part, the government has indicated a willingness to "reconsider [Brock's] conditions of release" with respect to travel if he "make[s] concrete and documented efforts that support his request."  Gov't's Opp'n at 6.  However, the government currently lacks sufficient information regarding "where [Brock] anticipates he will travel, how often he believes he will travel, or any other specific details as to where and when and why this travel will occur" to fully evaluate his request.  See id. at 5.  A status hearing is scheduled in this matter for April 27, 2021.  The Court advises Brock to confer with PSA and the government in advance of that hearing about his travel plans, at which time he may present a more concrete proposal to the Court.

* * *

Accordingly, for the foregoing reasons, and upon consideration of [11] defendant's Motion to Modify Conditions of Release, and the entire record herein, it is hereby

**ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Condition 7(u) in [13] the January 14, 2021 Order Setting Conditions of

Release is **AMENDED** as follows:

> Defendant may not use any social media—including, but not limited to, Facebook, Parler, Gab, Reddit, Instagram, Discord, Twitter, Snapchat, TikTok, 4Chan, 8Chan, and any other similar platform—on any electronic device (e.g. phone, tablet, computer, laptop). Defendant also may not use YouTube, except to view educational material relating to his prospective career as a home inspector or as approved by Pretrial Services.  Defendant must permit Pretrial Services to monitor his compliance with this condition, including through the use of internet monitoring software on his electronic devices.

And it is further

      **ORDERED** that defendant shall continue to comply with all other conditions of his pretrial release as set forth in [13] the January 14, 2021 Order Setting Conditions of Release.

      **SO ORDERED.**

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>April 16, 2021</u>