IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| United States | ) |
| | ) |
| v. | ) NO. 1:21cr140 |
| | ) |
| Larry Brock | ) |
| | ) |
| Defendant. | ) |

**MOTION[1] TO RECONSIDER ELECTRONIC MONITORING OR IN THE ALTERNATIVE TO MODIFY CERTAIN RESTRICTIONS ON TRAVEL**

Comes now, the accused, Larry Brock and moves to reconsider this Court's decision to maintain him on electronic monitoring or, in the alternative, to modify certain restrictions on his activities.

**BACKGROUND**

**I.  Background of Larry Brock**

Lt. Col. Brock lives in Texas and is a veteran of the Air Force with multiple combat deployments and decorations as an A-10 pilot.  He has had a productive private sector career in civilian aviation and other industries.  He has no criminal convictions.

**II.  Procedural Background**

Lt. Col. Brock is charged with misdemeanor offenses stemming from the events at the United States Capitol on January 6, 2021.  He surrendered to authorities in Northern District of Texas.  On January 14, following a hearing, the district judge set conditions of release, stating that:

---

[1] This motion was originally submitted under seal.  However, the government agrees that it can be filed on the public docket.

> I'm taking into account that the defendant quickly self-surrendered, he did not possess weapons, or, at this stage, have any evidence of violent actions involved with his alleged activities on January 6th, and his long and distinguished military career.

Ex. 1,

Lt. Col. Brock filed a motion to asking to be released from electronic monitoring and to be allowed certain uses of the internet. ECF 11. This Court denied the request to remove Lt. Col. Brock from electronic monitoring but granted him additional privileges for work travel and internet use. ECF 14, 17.

## ARGUMENT

### I. It Is Appropriate to Revisit the Need for Continued Electronic Monitoring in Light of Evidence Provided in Discovery that Shows Lt. Col. Brock is Not a Threat

At Lt. Col. Brock's first detention hearing in the Northern District of Texas, the government relied heavily on video still shots of him holding zip ties to justify detention. Lt. Col. Brock had allegedly previously stated publicly that he had found the zip ties and meant to return them to law enforcement, but the government disputed this explanation. The government argued to the district court as follows:

> Mr. Brock goes in, equipped in full combat gear, a combat helmet, a bulletproof vest, combat gear, and carrying[2] --- whether he picked them up at the Capitol as a fortuitous find, or whether he brought them with him to the Capitol, he's carrying flex cuffs to restrain hostages, and he has those flex cuffs when he makes his way to the Senate floor.
>
> In that context, his goal can be only one thing. He means to take hostages. He means to kidnap restrain, perhaps execute members of the United

---

[2] Lt. Col. Brock's helmet and vest were a reasonable response to the recent history of hostile actions by counter protesters at events related to former President Trump. They are not evidence of hostile intent.

States Government.[3]

Ex. 1 at 57. By making this argument, the government strongly implied that Lt. Col. Brock arrived at the Capitol in possession of the flex cuffs as part of a hostile plan. The government relied on that argument to cast heated political discussions on social media attributed to Lt. Col. Brock as something more sinister than mere talk.

Evidence produced in discovery has not borne out the government's argument. The government has produced CCTV footage showing Lt. Col. Brock in various locations of the U.S. Capitol. The videos do not show unruly behavior or property damage, let alone the violent conduct posited by the government. To the contrary, the videos show that Lt. Col. Brock acted to restrain at least one other individual. In a video recorded on the Senate floor, Lt. Col. Brock is clearly audible addressing another individual seated in the presiding chair of the Senate as follows: "Get out of that chair…it belongs to the Vice President of the United States, it's not our chair. Look, I love you guys, we're brothers, but we can't be disrespectful."[4]

In addition, the video evidence shows that Lt. Col. Brock's public statement that he found flex cuffs on the floor of the Capitol was true. A video recorded beginning at 2:37pm on Jan 6. shows Lt. Col. Brock standing with some other individuals near a door. Three police are standing by the door and bag of flex cuffs is clearly visible to the officers' left. At some point, the shuffle of the crowd disturbs the bag of flex cuffs and

---

[3] The government also argued that a patch depicting the fictional comic book character "the Punisher" denoted support for "vigilante justice." Ex. 1 at 20. In fact, the Punisher logo has long been widely popular in the post 9/11 military community. *See, e.g.* Rebecca Collard, *How a Marvel Comic Hero Became the Icon of the Fight Against Isis*, Time Magazine, April 13, 2015 (available at: https://time.com/3819227/punisher-iraq-isis/).

[4] The video produced by the government does not have audio. However, a video depicting the same conduct released by the media does contain the quoted audio.

several of them fall out. About one minute twenty seconds into the video, Lt. Col. Brock is observable retrieving one set of flex cuffs from the floor and a second from near a stairway. The video proves that the statement about finding the cuffs attributed to Lt. Col. Brock was accurate and that he did not bring the flex cuffs with him as part of a plan to wrongful acts at the Capitol.[5]

The government is still producing discovery including video evidence. Upon information and belief, further evidence will show that Lt. Col. Brock entered and exited the Capitol peacefully under the observation of law enforcement. It will show that he committed no violent or disorderly acts. Video cameras also likely captured him acting to restrain unruly individuals on other occasions than that already mentioned.

The video record of Lt. Col. Brock's conduct in the Capitol shows that certain hyperbolic social media posts relied upon by the government to justify his detention were simply overheated rhetoric during an especially emotional campaign season. The government's six-month investigation has not produced evidence that Lt. Col. Brock planned or attempted to commit hostile acts at the Capitol.

Lt. Col. Brock's scrupulous compliance with his strict release conditions over the past six months reinforces the conclusion that he is not a risk. He has and will continue to obey all instructions of the Court.

Removing Lt. Col. Brock from home detention would also be consistent with how this Court has treated other January 6 defendants charged with nonviolent offenses. *See*, *e.g.*, *United States v. Bradley Weeks*, 1:21cr247-TFH (ECF 12); *United States v. Stephen Horn*, 1:21cr301(defendant must notify PSA in advance of travel outside the E.D. NC);

*United States v. Jeffrey Finley*, 1:21mj238 (travel permitted withing N.D. W.Va.); *United States v. Nicholas Rodean*, 1:21cr57-TNM (travel permitted within D.Md. for defendant charged with two felonies).

**II.     In the Alternative, Lt. Col. Brock requests this Court Amend His Conditions of Release to Allow Reasonable Parental Visitation**

Lt. Col. Brock has a minor son with his estranged wife. He has previously requested permission travel within a short radius of his home during court ordered periods of visitation. Pretrial did not approve the request and the government objects to it as well.

If this Court is not prepared to release him from electronic monitoring at this point, Lt. Col. Brock requests that this Court amend his conditions of release to allow him to pick up and drop off his son pursuant to a court ordered visitation schedule. He also requests this Court to order that he be allowed to leave home during periods of court ordered visitation for activities with his son within five miles of his home.

**CONCLUSION**

For the foregoing reasons, Lt. Col. Brock respectfully requests this Court to remove him from house arrest with electronic monitoring. In the alternative Lt. Col. Brock request this Court to order that he be allowed to travel to pick up and drop off his son pursuant to a court ordered visitation schedule and travel within a five mile radius of his home during visitation periods.

Respectfully Submitted,

By:

/s/ *Charles Burnham*
Charles Burnham VSB # 72781
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1424 K St. NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I have served this filing on the government through the ecf system.

        Respectfully Submitted,

        By: /s/ *Charles Burnham*
        Charles Burnham VSB # 72781
        *Attorney for the Accused*
        Burnham & Gorokhov, PLLC
        1424 K St. NW, Suite 500
        Washington, DC 20005
        (202) 386-6920 (phone)
        (202) 765-2173 (fax)
        charles@burnhamgorokhov.com