**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Crim. No. 21-140 (JDB)** |
| **LARRY RENDALL BROCK,** | |
| **Defendant.** | |

## MEMORANDUM OPINION & ORDER

Larry Rendall Brock has been charged for his role in the events at the United States Capitol on January 6, 2021.  Pending before the Court is Brock's motion to modify two of his pretrial release conditions: home detention and location monitoring.  The government does not object to removing Brock from home detention but asks this Court to maintain him on location monitoring and restrict him to his residence at night.  For the following reasons, the Court will grant Brock's motion and deny the government's request to impose a curfew.

### Background

Brock is a fifty-four-year-old "veteran of the Air Force with multiple combat deployments."  Def.'s Mot. to Reconsider Elec. Monitoring or in Alt. to Modify Certain Restrictions on Travel ("Def.'s Mot.") [ECF No. 22] at 1.[1]  Video footage depicts Brock on the floor of the U.S. Senate Chamber and outside U.S. House Speaker Nancy Pelosi's office on January 6 wearing "a military-style helmet, tactical vest, and holding flex-cuffs in his right hand." See Aff. in Supp. of Crim. Compl. & Arrest Warrant [ECF No. 1-1] at 4–6.  Although the government does not allege that Brock acted violently or destroyed any federal property inside the

---

[1] The background is drawn from the evidence described in the Affidavit in Support of the Criminal Complaint and the parties' briefing.  The parties do not dispute these descriptions, only the inferences to be drawn from them. The Court will, therefore, take the proffered descriptions as true for the purpose of assessing Brock's motion.

Capitol, he did post a number of violent messages on Facebook concerning the 2020 presidential election and the January 6 events, see Gov't's Resp. to Def.'s Mot. ("Gov't's Opp'n") [ECF No. 27] at 3–4.  For instance, in the weeks leading up to January 6, Brock wrote: "I bought myself body armor and a helmet for the civil war that is coming," "[f]ire and blood will be needed soon," and "[t]he castle will be stormed.  See id. at 4.  And on January 6, Brock posted: "[p]atriots [are] on the Capitol," and "[m]en with guns need to shoot there [sic] way in."  Id.  Brock has no prior criminal convictions, see Def.'s Mot. at 1, but he was fired from a job in May 2018 for making violent comments to other employees.  See Tr. of Prelim. & Det. Hr'g (Jan. 14, 2021) ("Hr'g Tr.") [ECF No. 22-1] at 28:11–25.

Brock was arrested on January 10 following a criminal complaint for entering a restricted building or grounds, 18 U.S.C. § 1752(a), and violent entry and disorderly conduct, 40 U.S.C. § 5104(e)(2).  Magistrate Judge Jeffrey L. Cureton conducted a detection hearing in the Northern District of Texas on January 14 and released Brock pending trial on conditions, including home detention, location monitoring, and restricted internet use.  See Rule 5(c)(3) Docs. [ECF No. 5] at 17.  A month later, the government charged Brock via information with six misdemeanor offenses: entering and remaining in a restricted building or grounds, 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, 18 U.S.C. § 1752(a)(2); impeding ingress and egress in a restricted building or grounds, 18 U.S.C. § 1752(a)(3); entering and remaining on the floor of Congress, 40 U.S.C. § 5104(e)(2)(A); disorderly conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D); and impeding passage through the Capitol Grounds or Buildings, 40 U.S.C. § 5104(e)(2)(E).  See Information [ECF No. 7].  The grand jury returned a superseding indictment against Brock on June 23, adding a felony charge for obstructing an official proceeding, 18 U.S.C. § 1512(c)(2), and a misdemeanor charge for parading, demonstrating, or picketing in

the Capitol, 40 U.S.C. § 5104(e)(2)(G).  <u>See</u> Superseding Indictment [ECF No. 24].   The Indictment also dropped the two prior charges for impeding passage through the Capitol.  <u>See</u> <u>id.</u>

In the meantime, on March 15, Brock filed a motion asking this Court to release him from home detention and expand his internet access.  <u>See</u> Def.'s Mot. to Modify Conditions of Release [ECF No. 11].  Brock requested these changes because he was pursuing a career as a "home inspector and/or flight instructor," which would require "significant local travel" and necessitate access to online educational material and GPS directions.  <u>See</u> <u>id.</u> at 2–3.  The Court lifted the restrictions on Brock's internet use, except for social media, but declined to adjust his home detention status, explaining that Brock had "not challenge[d] Judge Cureton's findings or present[ed] any new evidence . . . for this Court to consider" regarding dangerousness or flight risk.  Order (Apr. 16, 2021) [ECF No. 14] at 4–5.  On April 27, Brock moved orally for permission to travel throughout the Northern District of Texas for job-related purposes without preapproval from the Pretrial Services Agency ("PSA").  <u>See</u> Min. Entry (Apr. 27, 2021).  Neither the government nor PSA objected, and the Court granted that request on May 12.  <u>See</u> Order (May 12, 2021) [ECF No. 17].

In his latest motion, Brock asks this Court to reconsider his home detention condition for a second time and terminate location monitoring.  <u>See</u> Def.'s Mot. at 1.  In the alternative, Brock seeks permission "to pick up and drop off his son pursuant to a court ordered visitation schedule" and "leave home during periods of court ordered visitation for activities with his son within five miles of his home."  <u>Id.</u> at 5.  The motion is now fully briefed and ripe for consideration.

## <u>Analysis</u>

The Bail Reform Act requires that a defendant on pretrial release be "subject to the least restrictive" set of conditions that will reasonably assure his appearance and the safety of the

community.  See 18 U.S.C. § 3142(c)(1)(B).  And the court may "at any time amend [an] order [setting conditions of release] to impose additional or different conditions."  Id. § 3142(c)(3).

Brock cites two developments since his detention hearing as justification for reconsidering his conditions.  First, he addresses the flex-cuffs he was seen holding at the Capitol.  According to Brock, additional video footage now confirms—as he has always maintained—that he found the flex-cuffs on the Capitol floor and did not bring them to the Capitol that day.  See Def.'s Mot. at 3–4.  Although the government had accounted for this possibility during his detention hearing, Brock says that the government "strongly implied" before Magistrate Judge Cureton that Brock arrived at the Capitol with flex-cuffs as part of a premeditated hostage plan, which necessarily affected Judge Cureton's decision.  Id. at 3.  Second, Brock posits that, after "dangl[ing] the possibility that more damaging evidence would emerge" at his detention hearing, the government has since failed to uncover any evidence that he acted violently or destructively inside the Capitol.  See Def.'s Reply to Gov't's Opp'n ("Def.'s Reply") [ECF No. 28] at 2.  Instead, Brock contends that the evidence actually shows that he tried to stop unruly behavior—saying to another rioter: "get out of that chair . . . it belongs to the Vice President of the United States, it's not our chair.  Look, I love you guys, we're brothers, but we can't be disrespectful."  See id.

According to the government, the only "changed" circumstance since Brock's detention hearing is his felony indictment.  See Gov't's Opp'n at 5–6.  Nonetheless, the government contends that maintaining him on "GPS monitoring with a curfew from 9:00 p.m. to 6:00 a.m. Central Time" in lieu of home detention would be adequate, and further notes that Brock's PSA agent "believes [Brock] would be fine without a location monitoring device."[2]  Id. at 7 & n.6.

---

[2] The government caveats its position slightly, stating that although it "still believes home confinement is the best way to adequately protect the community," it thinks "GPS monitoring with a curfew . . . would be most effective" given that Brock "has already been allowed to leave the home for work" and should be permitted to visit his son.  See Gov't's Opp'n at 7.

To begin, the Court agrees that removing Brock from home detention is now appropriate. Neither the government nor PSA view home detention as part of "the least restrictive" set of conditions that will reasonably assure Brock's appearance and the community's safety.  See 18 U.S.C. § 3142(c)(1)(B).  The Court will, therefore, focus its discussion on the location monitoring and curfew conditions, although the same considerations support ending home detention.

The government contends that location monitoring is "a necessary tool to keep the public safe."  Gov't's Opp'n at 6.  This Court has already observed that Brock's social media posts "are deeply disquieting, to say the least, and generate public safety concerns."  Order (Apr. 16, 2021). So does his decision to enter the Capitol in military gear and carry flex-cuffs onto the Senate floor, as the government submits.  See Gov't's Opp'n at 6.  But the Court is convinced that a combination of less restrictive conditions is sufficient to mitigate those concerns.  Brock is already prohibited from contacting anyone involved in the January 6 events or any protest, traveling outside the Northern District of Texas without preapproval, possessing firearms or other weapons, using social media, and entering the Capitol building or grounds.  See Rule 5(c)(3) Docs. at 17; Order (May 12, 2021).  Location monitoring is primarily "a technological method of ensuring compliance" with other release conditions, such as travel restrictions.  See United States v. Campbell, 309 F. Supp. 3d 738, 750 (D.S.D. 2018); see also United States v. Lopez, 800 F. App'x 473, 476 (9th Cir. 2020).  Brock has fully complied with his release conditions to date, and his PSA agent—who has worked closely with him for over six months now—no longer believes that location monitoring is necessary to ensure compliance moving forward.  See Gov't's Opp'n at 7 n.6.

Moreover, although this Court is not required to find changed circumstances in order to revisit Magistrate Judge Cureton's release order, it does find that this case's trajectory provides some cause to revisit Brock's conditions.  Brock was arrested four days after January 6, and the

situation was—in the government's own words—"very volatile" at the time.  See Hr'g Tr. at 63:2–5.  Indeed, the government informed Magistrate Judge Cureton at the detention hearing that "there's a lot of investigation yet to be done," and that the government "fully expect[ed] that more serious charges will be forthcoming."  Id. at 63:6–15.  Brock now faces a felony charge.  But, as the government explained at the most recent status hearing, that charging decision was not based on new factual allegations against Brock—only a further review of existing evidence.  See Def.'s Reply at 2.  And it seems that even the government—by not objecting to Brock's request to terminate home detention—does not believe that the addition of a felony charge actually suggests Brock is more dangerous than was previously known.

Of course, the fact that video footage produced in discovery now shows Brock acting to promote "peaceful" behavior inside the Capitol on one occasion does not excuse his other conduct. But the Court here is tasked only with assessing Brock's dangerousness.  The nature of his behavior at the Capitol, as well as the continuing absence of any evidence that he acted violently or destructively, bear strongly on this question.  This Court, like PSA, fully expects that Brock's compliance with his conditions will continue even without location monitoring.  Therefore, the Court will terminate Brock's location monitoring condition.

Turning to the government's request for a curfew, the government argues that restricting Brock to his residence from 9 PM to 6 AM would be the "most effective" way (along with location monitoring) to "protect the community."[3]  See Gov't's Opp'n at 7.  But the government has not elaborated on this position, and the Court does not see how a nightly curfew is tailored to prevent the particular type of danger that Brock poses—namely, of engaging in or facilitating politically

---

[3] According to the government, Brock's PSA agent has "stated that a curfew would work" for Brock and that the hours of 9 PM to 6 AM "would allow [Brock] to continue his current work schedule."  Gov't's Opp'n at 7 n.6. But this Court has not been provided with any information that PSA believes a curfew is necessary to reasonably assure community safety or Brock's appearance in court.

motivated violence.  Cf. United States v. Hutchins, 298 F. Supp. 3d 1205, 1207 (E.D. Wis. 2017) (affirming magistrate decision to remove defendant's curfew where defendant was not "particularly" likely to "commit crimes at night").  A curfew may also be useful "to limit a person's movements when he is a flight risk."  United States v. Rueb, 612 F. Supp. 2d 1068, 1070 (D. Neb. 2009).  But aside from making a passing reference to flight risk in the final sentence of its brief, the government does not argue that Brock presents any such risk.  See Gov't's Opp'n at 8.

To be sure, the government did suggest to Magistrate Judge Cureton that there was "a risk of nonappearance . . . because [Brock] does believe so righteously that what he was doing [was] correct."  Hr'g Tr. at 59:19–20.  But even then, the government acknowledged that the "main thrust" of its argument was that Brock "presents a danger to the community, absolutely" and specifically a "danger of violence."  Id. at 59:1–24.  "A determination that an individual is a flight risk must be supported by a preponderance of the evidence," United States v. Vasquez-Benitez, 919 F.3d 546, 551 (D.C. Cir. 2019), and that standard is not satisfied on the current record.  Brock has strong ties to Texas, where his parents and minor son reside.  See Hr'g Tr. at 60:13–14; Def.'s Mot. at 1, 5.  He turned himself in three hours after the FBI first called him and connected the FBI agent to his attorney in the interim.  See Hr'g Tr. at 23:2–23.  He has surrendered his passport to PSA.  See Rule 5(c)(3) Docs. at 17; Pretrial Compliance Report [ECF No. 23] at 1–2.  And, notwithstanding his belief in the righteousness of his actions, he has consistently demonstrated "his willingness to comply with his obligations to appear in this Court as required."  See Hutchins, 298 F. Supp. at 1209–10 (finding location monitoring and curfew were not necessary absent risk of flight and given strong record of compliance with conditions).  Hence, without further explanation from the government as to how a curfew is necessary to reasonably assure the community's safety or Brock's appearance, the Court will deny that request.

\* \* \*

Accordingly, for the foregoing reasons, and upon consideration of [22] defendant's Motion to Reconsider Electronic Monitoring or in the Alternative to Modify Certain Restrictions on Travel, and the entire record herein, it is hereby

**ORDERED** that the motion is **GRANTED**; it is further

**ORDERED** that [13] the January 14, 2021 Order Setting Conditions of Release is **MODIFIED** to remove Condition 7(p)(ii) (Home Detention) and Condition 7(q) (Location Monitoring); it is further

**ORDERED** that defendant may travel throughout the Northern District of Texas, but must obtain approval from his Pretrial Services Officer for all other travel; and it is further

**ORDERED** that defendant shall continue to comply with all other conditions of his pretrial release as set forth in [13] the January 14, 2021 Order Setting Conditions of Release, [14] the Court's April 16, 2021 Order, and [17] the Court's May 12, 2021 Order.

**SO ORDERED.**

                                                            /s/
                                            JOHN D. BATES
                                            United States District Judge

Dated: August 16, 2021