#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States | ) | |
| | ) | |
| v. | ) | NO. 1:21cr140 |
| | ) | |
| Larry Brock | ) | |
| | ) | |
| Defendant. | ) | |

### MOTION TO COMPEL DISCOVERY ON SELECTIVE PROSECUTION

### BACKGROUND

Mr. Brock is charged in a six count indictment with Obstruction of an Official Proceeding (18 U.S.C. § 1512), Entering and Remaining in a Restricted Building or grounds (18 U.S.C. § 1752), Disorderly and Disruptive Conduct in a Restricted Building or Grounds, (18 U.S.C. § 1752), Entering and Remaining on the Floor of Congress, (40 5104(e)(2)(A)), Disorderly Conduct in a Capitol Building (40 U.S.C. § 5104(e)(2)(D)), and Parading, Demonstrating or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)).

Mr. Brock traveled to Washington, D.C. to participate in the permitted First Amendment demonstration that took place on January 6. The participants were widely understood to be protesting fraud and illegality in the 2020 election and supporting then-President Donald J. Trump.

Based on government discovery productions, there is no allegation that Mr. Brock forcibly entered the capitol or engaged in property destruction or violence. All video footage shows him behaving in a peaceable manner.

## ARGUMENT

**I. Selective Prosecution Based on Political Viewpoint Unconstitutional; Discovery Required Upon Showing of "Colorable Claim"**

While the government has "broad discretion" in enforcing criminal law, it is nevertheless "subject to constitutional constraints." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Under the Due Process clause of the Fifth Amendment, the government cannot bring criminal charges that amount to a "practical denial of equal protection of the law." *Id*. Such a pursuit would give rise to a claim of selective prosecution. \.

To show selective prosecution, a defendant must show that 1) the prosecution had a discriminatory effect, and 2) the prosecution was motivated by a discriminatory purpose. *Id*. at 465. To establish the first element, the defendant must show that "similarly situated" persons were not prosecuted. *Id*. The defendant may establish discriminatory purpose either with direct evidence of discriminatory intent or with statistical disparities or other indirect evidence regarding the unequal application of the law. *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997).

To justify discovery related to selective prosecution, the defendant must establish a "colorable claim" as to the two prongs. *Id*. at 16.

**II. Information Relevant to Selective Prosecution Is Discoverable Under *Brady v. Maryland***

Although some courts have held that information relevant to selective prosecution is not discoverable as *Brady*, other cases support the opposite view. *See, e.g. United States v. Blackley*, 986 F.Supp. 600, 603 (D.D.C. 1997)("only material that is exculpatory

is covered under Brady…[i]t is therefore not material that would only support…claims of selective prosecution"); *but see, United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000)("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process). Mr. Brock submits that cases holding that such information is in fact discoverable represent the better view. Such information should be considered discoverable under *Brady* because it can be used to support the valid defense of selective prosecution. This provides an additional basis to order this information produced.

### III.  Comparable Cases

#### a.  Portland Riots

The most conspicuous example to date of the DOJ's political bias is the handling of the disturbances in Portland Oregon during the summer of 2020. Portland's federal courthouse was the focus of intense protest activity in favor of police reform for more than 90 consecutive nights[1] following the death of George Floyd during a police encounter in Minnesota. In one court filing, the government described the protests as follows:

> [The protests] [w]ere followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. One violent event impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov cocktail. The Mark O Hatfield Courthouse has experienced significant damage to the façade, glass, and building fixtures during the weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000. Other federal

---

[1] https://www.justice.gov/usao-or/pr/74-people-facing-federal-charges-crimes-committed-during-portland-demonstrations

> properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

*United States v. Bouchard*, 3:20-mj-165 (D.Ore. July 24, 2020), ECF 1-1 at 4-5. The protests involved thousands gathering on a nightly basis. *United States v. Judd*, 2021 WL 6134590, *10 (D.D.C. December 28, 2021). Despite these enormous numbers, federal prosecutors limited themselves to charges against a few dozen persons, mostly involving property destruction or assaulting law enforcement.[2] Many of these cases were later dismissed or resolved with extremely favorable plea bargains.[3] A handful of Portland protesters were charged with lesser offenses. *See, e.g. United States v. Ian Wolf*, 3:20-cr-286, ECF 1 (D. Ore.)(Information charging Creating a Hazard on Federal Property under 41 C.F.R. § 102.74.380(d) and Failing to Obey a Lawful Order under 41 C.F.R. § 102.74.385). The overwhelming majority of the persons involved in the Portland protests were not charged with any offenses.

As this Court is aware, the federal response to the activity at the Capitol on January 6 was quite different. Anyone the government could identify as being there that day got charged with something, no matter how peaceful their behavior was. Many

---

[2] *Id*.
[3] https://www.kgw.com/article/news/investigations/portland-protest-cases-dismissed-feds/283-002f01d2-3217-4b12-8725-3fda2cad119f; *see also, United States v. Judd*, 1:21-cr-40-TNM, ECF 138-1 (chart submitted in support of defendant's motion for discovery on selective prosecution)(attached to this filing as Exhibit 1).

persons in this category, including Mr. Brock, received felony charges. The government has not dismissed any significant number of these cases or offered diversion agreements.

The stark difference in federal response to Portland and January 6th can only be explained by a bias in DOJ leadership in favor of liberal causes such as police reform and against conservative causes such as election integrity or support for Donald Trump. To be sure, one member of this Court reached a different conclusion in *Judd*. Judge McFadden found that the disparate treatment of Portland protesters adequately explained by the fact that those protests occurred at night when fewer people would be present and subject to injury, whereas the January 6th protests occurred during the day. *Judd* at *6. However, this distinction is only relevant for those individuals who engaged in conduct that would endanger civilians. For defendants such as Mr. Brock, who are not alleged to have engaged in violence or property destruction, the night/day distinction does not explain the disparate treatment.

Mr. Brock submits that the Portland circumstance represents at least a "colorable claim" of selective prosecution sufficient to justify discovery on the issue.

### b. Other Comparable Cases

The seeming lack of comparable cases to Mr. Brock is likely due to the fact that peaceful protest activity in the District of Columbia does not often result in any criminal charges, let alone federal felonies. A few examples will suffice. In 2018, more than 300 people were arrested in connection with the confirmation hearings for Supreme Court Justice Kavanaugh.[4] None seem to have been ultimately charged, according to online Superior Court records. In 2019, 10 protesters staged a sit-in blocking the doors to

---

[4] https://www.cnn.com/2018/10/04/politics/kavanaugh-protests-us-capitol/index.html

Immigration and Customs Enforcement headquarters.[5] They were charged with unlawful entry, a misdemeanor.[6] The cases were "no papered" prior to the first court appearance. The lack of federal felony prosecutions against persons engaged in peaceful protest further supports the "colorable claim" that discovery on selective prosecution is appropriate here.

## CONCLUSION

For the foregoing reasons, the defendant asks this Court to order the government to produce any documents, memoranda, notes, or other records documenting the charging and plea decisions in the Portland and January 6 prosecutions.

Respectfully Submitted,

By:

/s/ *Charles Burnham*
Charles Burnham VSB # 72781
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1424 K St. NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)

---

[5] https://www.washingtonpost.com/local/10-protesters-arrested-inside-ice-headquarters-in-washington/2019/07/16/f030bb8e-a7d9-11e9-a3a6-ab670962db05_story.html
[6] *Id.*

(202) 765-2173
charles@burnhamgorokhov.com

**CERTIFICATE OF SERVICE**

I have served this filing on the government through the ecf system.

Respectfully Submitted,

By: /s/ *Charles Burnham*

Charles Burnham VSB # 72781
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1424 K St. NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com
