UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.             : | Case No. 1:21-CR-140-JDB |
| : | |
| **LARRY BROCK,** : | |
| : | |
| Defendant. : | |

**MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL DISCOVERY ON SELECTIVE PROSECUTION**

Defendant Larry Brock seeks (ECF No. 49) to compel production of all internal government correspondence concerning its charging decisions in this case. Brock seeks such materials in aid of his allegation that the government selectively targeted him for prosecution due to his political affiliation. This Court previously denied a similar discovery request in *United States v. Judd*, No. 1:21-cr-40, 2021 WL 6134590 (D.D.C. Dec. 28, 2021), and the same course is warranted here.

**FACTUAL BACKGROUND**

The grand jury charged Brock by superseding indictment with violations of Title 18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of an Official Proceeding), Title 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), Title 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), Title 40 U.S.C. § 5104(e)(2)(A) (Entering and Remaining on the Floor of Congress), Title 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building), and Title 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). [ECF No. 24] These charges stem from Brock's conduct at the U.S. Capitol on January 6, 2021, as a Joint Session of Congress convened to certify the 2020 U.S. Presidential Election. The Capitol Building and exterior grounds were

1

closed to the public and surrounded by law enforcement officers, barricades, and signage. As the congressional session convened, Brock entered the Capitol through the Senate Wing Doors at approximately 2:24 p.m. Video footage shows Brock on the Senate floor wearing a military-style helmet, khaki pants, and gray and black fatigues over a military vest, holding flex cuffs in his right hand. An additional photograph shows Brock outside the office of Speaker of the House Nancy Pelosi. Brock was inside the Capitol for approximately 38 minutes.

## ARGUMENT

Brock alleges that the government selectively targeted him for prosecution because of a bias in Department of Justice (DOJ) leadership in favor of liberal causes, and against conservative causes, such as election integrity or support for Donald Trump. [ECF Dkt. No. 49 at 4-5]. Brock's motion fails the threshold evidentiary showing for discovery on a selective-prosecution claim. His request should be denied.

**I.      Legal Framework**

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (citation omitted); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its

most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).

To overcome that presumption, a defendant must present "clear evidence" that a decision to prosecute was "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Armstrong*, 517 U.S. at 464-465. "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Id*. (citation omitted). The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470. "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc*., 684 F.2d 928, 947 (D.C. Cir. 1982); *see also United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008) ("[D]iscovery will not be allowed unless the defendant's evidence supports each of the two furcula of his selective prosecution theory: failure on one branch dooms the discovery motion as a whole").

**II.    Discussion**

Brock has failed to make the threshold showing on either selective-prosecution element. He has not presented any evidence suggesting "that (1) [he] was singled out for prosecution from

3

among others similarly situated and (2) that [his] prosecution was improperly motivated." *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)). "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463.

### A. Brock has not made a colorable showing that the government singled him out for prosecution.

Brock must first adduce evidence that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Irish People, Inc.*, 684 F.2d at 946 (citation omitted). As a judge of this Court explained, an individual may be similarly situated if he "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced. … A multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another. These may include, inter alia, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant.") (internal citations omitted).

Brock fails this showing. A selective-prosecution claim requires the defendant to identify "similarly situated" individuals who "have not been prosecuted," *Irish People, Inc.*, 684 F.2d at

946 (citation omitted), and Brock has pointed to no such individual.  He instead cites thirty-nine cases (from a sample of seventy-four) where the government charged the defendant with federal offenses arising from riots around the federal courthouse in Portland, Oregon and subsequently dismissed the charges, entered a deferred-prosecution agreement, or acceded to the defendant's guilty plea on reduced charges in many of those cases. Doc. 49 at 1-12.

      This comparison fails, first and foremost, because the government actually charged nearly all defendants in the listed Oregon cases with civil-disorder and assault offenses. *See* Doc. 49-1.  As such, he has failed to "show anyone in a similar situation who was not prosecuted." *Irish People, Inc.*, 684 F.2d at 946.

      More fundamentally, the thirty-nine Oregon cases serve as improper "comparator[s]" because those defendants and Brock are not similarly situated. *Stone,* 394 F. Supp. 3d at 31.  Brock entered the Capitol building through a broken door, next to multiple windows that had already been broken by fellow rioters.  He did so while elected lawmakers and the Vice President of the United States were present in the building and attempting to certify the results of the 2020 Presidential Election in accordance with Article II of the Constitution.  Brock ended up on the Senate floor, a place where the vast majority of rioters never went, where the counting of the electoral college votes was supposed to be taking place but for the actions of Brock and his fellow rioters.  All this was captured on multiple high-definition videos.

      Contrast that with the thirty-nine Oregon defendants, who—despite committing serious offenses—never entered the federal courthouse structure, impeded an official proceeding, or were alleged to have engaged in repeated assaults on law enforcement officers spread out over a few hours.  Additionally, as noted above, the government's evidence in those Oregon cases that resulted in dismissal or deferred resolution agreements, often relied on officer recollections (*e.g.*,

5

identifying the particular offender on a darkened plaza with throngs of people) that could be challenged at trial – rather than the multiple videos from different angles capturing Brock's actions in this case.

As Brock acknowledges, another Capitol Riot defendant—David Lee Judd—previously sought to compel production of internal government communications about its charging decisions. Judd alleged that the government had charged him (a conservative who supported President Trump) more severely than liberal-aligned defendants who participated in riots that plagued Portland in the summer of 2020.  *See Judd*, 2021 WL 6134590 at *1.

Judge McFadden denied the motion.  He first held that Judd was not similarly situated to his comparison class of Portland defendants.  "Although both Portland and January 6 rioters attacked federal buildings," Judge McFadden observed that "the Portland defendants primarily attacked at night, meaning that they raged against a largely vacant courthouse."  *Id*. at *5.  "In contrast," Judge McFadden explained that "the January 6 rioters attacked the Capitol in broad daylight" as "[t]housands of congressional staffers," "hundreds of legislators and the Vice President" were inside.  *Id*.  Because "the[se] actions endangered hundreds of federal officials in the Capitol complex," *id*., Judge McFadden held that Judd "failed to make a credible showing of different treatment of similarly situated persons"—as *Armstrong*'s first prong demands.  *Id*. at *6 (internal quotation marks omitted).

What was true in *Judd* is true here.  Brock and others around him entered the Capitol Building as the Vice President, Members of Congress, and thousands of staffers convened inside. That conduct, and the "threat to civilians" it engendered, *id*. at *5, dispels any inference of disparate treatment.  The Court should accordingly apply the reasoning in *Judd* to Brock's case.

6

Brock's attempts to circumvent *Judd* lack merit. Brock attempts to distinguish *Judd* on the basis that *Judd* engaged in conduct that would endanger civilians, while Brock did not. ECF 49 at 5. The government disagrees. Brock may not be alleged to have engaged in physical violence himself, but he was part of a mob that broke into the Capitol building. Brock entered through a broken door, and eventually made his way down to the Senate floor, where the counting of the electoral college votes was supposed to be occurring but for the mob. In any event, Judge McFadden did not tether his decision to Judd's specific conduct in throwing the firecracker. He rather addressed "the January 6 rioters [who] attacked the Capitol" as a class. 2021 WL 6134590 at *5. And because that class encompasses Brock, that analysis applies equally to him.

Brock lastly references the protests in 2018 at Justice Kavanaugh's Supreme Court confirmation hearings—intimating that the government treated him more severely than individuals who engaged in that protest. ECF 49 at 5, as well as the 2019 protest where ten individuals staged a sit-in blocking doors to Immigration and Customs Enforcement (ICE) headquarters. ECF 49 at 5-6. These contentions fail to show disparate treatment because the cited instances of protests did not threaten the safety of thousands. Brock's conduct, and the conduct of those around him, did. *See Judd*, 2021 WL 6134590 at *5.

All told, Brock has failed his threshold showing on *Armstrong*'s first element.

### B.     Brock's motion adduces no evidence of discriminatory purpose.

With respect to *Armstrong*'s second prong, Brock has failed to adduce any evidence that improper motives undergird this prosecution.

Brock intimates that the government's decision to charge him, but not individuals who committed crimes in 2018 at Justice Kavanaugh's Supreme Court confirmation hearing, as well as in 2019 at a protest with ten individuals outside of ICE headquarters reveals a discriminatory

7

motive. ECF 49 at 5-6. That allegation is equally baseless. The decision whether to prosecute conduct occurring in 2018 and 2019 was made by the previous U.S. Attorney for the District of Columbia. *See Judd*, 2021 WL 6134590, at *6 n.9 (noting that [a] Republican-appointed U.S. Attorney (under the direction of a Republican-appointed Attorney General) was responsible for the initial prosecutorial decisions in Portland"). Likewise, the previous U.S. Attorney initiated many of the January 6 cases now on this Court's docket. *See id*. ("DOJ began arresting January 6 defendants while still under Republican leadership."). As this timeline shows, Klein's "narrative of Government malfeasance"—that "DOJ purposefully prosecuted him for his politics"—"does not fit reality." *Id*.

The U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that Brock's political views played no role in his office's charging decisions in this case.

## CONCLUSION

For these reasons, Brock's motion to compel discovery should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

BY:   */s/ April H. Ayers-Perez*
        APRIL H. AYERS-PEREZ
        Assistant United States Attorney
        Detailee
        TX Bar No. 24090975
        11204 McPherson Road, Suite 100A
        Laredo, Texas 78045
        (956) 754-0946
        Email: April.Ayers-Perez@usdoj.gov