**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-140-JDB** |
| **v.** | : | |
| | : | |
| **LARRY BROCK,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO STRIKE PORTIONS OF THE SUPERSEDING INDICTMENT**

The United States of America respectfully moves to strike portions of the superseding indictment in this case. The Defendant is opposed to this motion. For the reasons set forth below, the Court should strike language referring to the "Vice President-elect" in the counts charging the defendant with violations of 18 U.S.C. § 1752.

I.      **Background**

In 18 U.S.C. § 1752, Congress prohibited certain types of conduct in any "restricted building or grounds." As relevant here, Section 1752 defines a "restricted building and grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). An individual violates Section 1752 by, among other things, "knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting," or if that individual "intends to and does impede government business through disorderly or disruptive conduct while in the restricted area." *United States v. Griffin*, No. 21-cr-92 (TNM), --- F.Supp.3d ---, 21 WL 27778557, at *3 (D.D.C. July 2, 2021) (cleaned up). The list of

individuals whom the United States Secret Service is authorized to protect includes the Vice President and the Vice President-elect.  18 U.S.C. § 3056(a)(1).

The superseding indictment in this case alleges that the defendant violated Section 1752 on January 6, 2021.  Specifically, Count 2 alleges that the defendant violated Section 1752(a)(1) when he "did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, *where the Vice President and Vice President-elect were temporarily visiting*, without lawful authority to do so."  ECF No. 24, at 2 (emphasis added).  Similarly, Count 3 alleges that the defendant violated Section 1752(a)(2) when he "did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, *where the Vice President and Vice President-elect were temporarily visiting*, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions."  ECF No. 24, at 2 (emphasis added).

Further investigation has shed light on the whereabouts of the Vice President and Vice President-elect during January 6, 2021.  *See* Exhibit A, Declaration of Sergeant Stephen T. James ("James Declaration"); Exhibit B, Declaration of Jason Jolly, Staff Assistant, United States Secret Service ("Jolly Declaration").  The Vice President left the Senate Chamber at 2:26 pm and entered a "secure location within the Capitol Complex" around 2:28 pm.  James Declaration, ¶ 4.  The Vice President remained at that secure location until he returned to the Senate Chamber around 6:29 pm.  *Id.* at ¶ 4-5.  The Capitol Complex refers to "the Capitol Building and Capitol Visitor Center," *id.* at ¶ 3, and was "entirely within the restricted perimeter" established around the Capitol

building and Grounds on January 6, 2021.  *Id.* at ¶ 7.  By contrast, the Vice President-elect, although present at the Capitol on the morning of January 6, had left and was planning to return to the Capitol until her travel there "was delayed when the Joint Session was interrupted by the riot." Jolly Declaration, ¶ 3.  The Vice President-elect thus did not return to the Capitol until approximately 7 pm to participate in the Certification of the Electoral College vote.  *Id.* at ¶ 4.

Based on these factual developments, the government moves the Court to amend the charging language in all counts charging a violation of Section 1752.  Specifically, the government requests that the Court amend the reference to "where the Vice President and Vice President-elect were temporarily visiting" to "where the Vice President was temporarily visiting" in Counts 2 and 3.[1]

## II.   Argument

The Fifth Amendment of the Constitution requires that the prosecution of a criminal defendant facing a felony charge[2] "be begun by indictment."  *Stirone v. United States*, 361 U.S. 212, 215 (1960).  Once an indictment has issued, that charge "may not be broadened through amendment except by the grand jury itself."  *Id.* at 216.  By contrast, where the indictment "fully and clearly" charges an offense's elements, no constitutional infirmity arises if that indictment "alleges more crimes or other means of committing the same crime."  *United States v. Miller*, 471 U.S. 130, 136 (1985).  Thus, language in the indictment that is "unnecessary to and independent

---

[1] As noted above, Section 1752 defines a "restricted building and grounds" to include a building or grounds where a protected person "is or *will be* temporarily visiting."  18 U.S.C. § 1752(c)(1)(B) (emphasis added).  The government does not request the Court to amend the superseding indictment to include the future tense—"would be"—verb.

[2] The counts charging violations of Section 1752 are not felonies.  But they appear in a superseding indictment because the defendant is facing felony offenses in other counts.  *See* ECF No. 24, at 1-2 (Count 1 of the superseding indictment charges the defendant with the felony offense of obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) and 2).

of" the offense's allegations "may normally be treated as 'a useless averment' that 'may be ignored.'" *Ibid.* (quoting *Ford v. United States*, 273 U.S. 593, 602 (1927)).

A court therefore has the authority "to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it." *Miller*, 471 U.S. at 144; *see United States v. Quinn*, 401 F. Supp. 2d 80, 90 (D.D.C. 2005) (granting government motion to strike from an indictment language that referred not to "essential elements" but instead to "different means by which the defendants committed an alleged offense (any one which alone could support a conviction)"); *see also United States v. Holland*, 117 F.3d 589, 594-95 (D.C. Cir. 1997) ("Paring down the conspiracy's time frame added no new charges to the indictment" and thus did not require re-submission to the grand jury).[3]  In *United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989) (Greene, J.), the government sought to narrow a conspiracy charge by dropping all language referring to one object of the alleged scheme. *Id.* at 7.  In granting that motion, Judge Greene concluded that striking language from an indictment was consistent with the Constitution because "(1) the indictment as so narrowed constitute[d] a completed criminal offense, and (2) the offense [wa]s contained in the indictment as originally returned." *Id.* at 9.

Here, after removal of the language that the government seeks to strike, the superseding indictment continues to state viable offenses that have been in the charging document since the date of its return by the grand jury.  In Counts 2 and 3, the key language on which the Section 1752 charge relies—that a person protected by the Secret Service was temporarily visiting a posted, cordoned-off, or otherwise restricted area within the Capitol—remains.   The superseding

---

[3] The Court's authority under *Miller* to strike language from an indictment at the government's request is distinct from the government's authority—with leave of the Court—to dismiss all or part of an indictment, information, or complaint under Rule 48(a) of the Federal Rules of Criminal Procedure.

indictment issued by the grand jury identified the same protected person—the Vice President—on which the amended language relies. Deleting reference to the Vice President-elect "simply 'narrows' the scope of the charges, which 'adds nothing new to the grand jury's indictment and constitutes no impermissible broadening.'" *Quinn*, 401 F. Supp. 2d at 90 (quoting *Holland*, 117 F.3d at 595) (brackets from quotation omitted).[4]

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

*/s/ April Ayers-Perez*
APRIL AYERS-PEREZ
Assistant United States Attorney
Detailee
TX Bar No. 24090975
11204 McPherson Rd., Suite 100A
Laredo, TX 78045
(956) 754-0946
April.Ayers-Perez@usdoj.gov

---

[4] Amending the subject-verb agreement—from the "Vice President and Vice President-elect *were* temporarily visiting" to the "Vice President *was* temporarily visiting"—is an "insignificant" correction that does not require resubmission to the grand jury. *See United States v. Bush*, 659 F.2d 163, 167 (D.C. Cir. 1981).