UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**LARRY BROCK,**<br><br>Defendant. | Case No. 21-cr-140 (JDB) |

## UNITED STATES' TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and various legal issues likely to be brought before the Court.

### 1.  THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election.  Vice President Michael Pence, as President of the Senate, was there to preside over the joint session and, later, the Senate proceedings.  On that day, physical barriers surrounded the U.S. Capitol building and grounds.  At all relevant times, the United States Capitol building and its grounds—including the eastern stairs leading to the Capitol Rotunda, the terrace outside the Rotunda doors, and the entire Capitol building itself— were closed to members of the public.

The defendant, Larry Brock, a retired Lieutenant Colonel in the United States Air Force, was among the group of rioters who illegally entered the U.S. Capitol grounds, and then the Capitol building, that day.  The defendant entered the Capitol through the Senate Wing Doors and remained inside the building for approximately 37 minutes.  While present in the

1

Capitol, the defendant went into the Senate Gallery and on to the Senate floor, where he rifled through paperwork on Senator's desks.  The defendant spent approximately eight minutes on the Senate floor.  Through his conduct, the defendant violated 18 U.S.C. §§ 1512(c)(2) and 2, 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(A), 5104(e)(2)(D), and 5104(e)(2)(G).

## 2.  THE GOVERNMENT'S PROOF

With this filing, the government aims to streamline the presentation of evidence in the trial and focus the legal issues before this Court.  To prove the general events that took place during the riot, the government plans to present stipulated testimony and exhibits related to the U.S. Senate.  The government will also present testimony of a United States Capitol Police (USCP) Captain and USCP Sergeant, a United States Secret Service (USSS) Agent, a Metropolitan Police Department (MPD) officer who captured the defendant shortly before he left the Capitol building on her body worn camera (BWC), and the lead Federal Bureau of Investigation (FBI) agent who investigated the case. This presentation will prove the charged offenses beyond a reasonable doubt.

### A.  Stipulated Testimony

Earlier this year, two other cases proceeded to trial that involved offenses committed on January 6, 2021: *United States v. Guy Reffitt*, 1:21-cr-00032-DLF (February 28 through March 8, 2022) and *United States v. Couy Griffin*, 1:21-cr-00092-TNM (March 21-22, 2022). Both featured testimony from a General Counsel to the secretary of the U.S. Senate.

The testimony and evidence presented through this witness is relevant to prove several key elements of the offenses.  Count One, which charges violations of 18 U.S.C. §§ 1512(c)(2) and 2, Count Three which charges a violation of 18 U.S.C. § 1752(a)(2), and count five which charges a violation of 40 U.S.C. § 5104(e)(2)(D), requires proof of an intent to impede or

disrupt an official proceeding (Count One), or to impede or disrupt government business or official functions (Count Three), or a hearing before a Congressional committee (Count Five). Count Three further requires proof that the disorderly or disruptive conduct occurred "when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2).  The testimony and evidence from the Senate witness will establish these points: Congressional proceedings were disrupted when the riot forced Congress to adjourn and members to evacuate and, even after that, the riot and the presence of rioters constituted an ongoing disruption in that Congress could not reconvene until the building and grounds were secured.[1]

At the same time, the government expects that the testimony from this witness will be non-controversial.  The government does not expect this witness to identify the defendant or to describe the defendant's conduct.  To save time, and to focus on the facts that will be in dispute, the government plans to offer into evidence transcripts of testimony from the *Reffitt* trial, the *Griffin* trial, or both, along with key pieces of evidence.  The government has discussed this plan with defense counsel, and the defense counsel does not object to it.  The government will offer supplemental testimony from a USCP witness to establish precisely how the USCP responded to the riot and how the presence of the rioters in the Capitol building forced Congress to adjourn and to remain adjourned until the Capitol building and grounds were secured.

### B.  Testimony from FBI, USCP, and MPD Witnesses

The government will present testimony from John "Jack" Moore, the FBI case agent assigned to this matter.  Agent Moore arrested the defendant on January 10, 2021, and executed on a search warrant on the defendant's residence on that same day.  Agent Moore has

---

[1] On this point, the government will offer USCP testimony to supplement the record developed.

3

reviewed the extraction of data from the defendant's cell phone, the return from a search warrant for the defendant's Facebook account, and has reviewed the USCP footage that captures the defendant in the Capitol building.  Given this foundation, Agent Moore will describe the electronic and other evidence of the defendant's conduct on January 6, 2021, and the electronic messages in the days, weeks, and months leading up to January 6, 2021.

On January 5, 2021, the defendant flew from Dallas, Texas to Washington, D.C.  On January 6, 2021, the defendant attended the former President's "Stop the Steal" rally in Washington, D.C.  An open-source video captured the defendant there.  The defendant then marched down to the U.S. Capitol with the crowd of people.  The defendant climbed the stairs on the west side of the Capitol building before ultimately entering the Capitol at approximately 2:24 p.m. through the Senate Wing Doors.  While at the "Stop the Steal" rally and while marching towards the Capitol, the defendant was wearing a tactical vest, and carrying a helmet in his hand.  Prior to entering the Capitol, however, the defendant donned the helmet.

Several things are noteworthy about the defendant's entry.  First, the windowpanes to the right and left of the Senate Wing Doors had been smashed.  Glass would have covered the floor around them.  Second, the Senate Wing Doors that the defendant entered through had been broken approximately ten minutes prior.  Notably, neither the defendant nor the other rioters nearby entered the U.S. Capitol through a security checkpoint, visitor center, or magnetometer, nor did he present identification to a security official.  All these hallmarks of entry into a secure government building were missing that day, and with good reason: the Capitol and grounds were entirely closed to the public until they were overrun by the rioters.

The defendant remained in the Capitol building for approximately 37 minutes, from approximately 2:24 p.m. to 3:01 p.m.  He proceeded from the Senate Wing Doors down the

hallway through the Crypt and Memorial Door area.  The defendant then proceeded up the stairs near the Memorial Door, to the second floor of the Capitol building.  The defendant briefly entered the Rotunda, before making his way to the area between the Rotunda and the East Front Rotunda doors, also referred to as the Rotunda Door Interior.  While inside this area, the defendant recovers a discarded  pair of plastic flex cuffs..  The defendant retains the flex cuffs for the remainder of his time inside the Capitol building.

The defendant then walks up the Gallery Stairs, to the third floor.  The defendant proceeds down the East Corridor toward  the Senate Gallery with a group of other rioters.  A couple of rioters get into an altercation with two USCP officers attempting to secure the Senate Gallery.  The defendant intervenes, preventing a further assault on the officers.  The defendant then enters the balcony of the Senate at approximately 2:43 p.m..  The defendant then leaves the Senate Gallery area and walks downstairs to the second floor.  The defendant arrives at a security desk outside the Senate Lobby doors, the same doors that Vice President Michael Pence left from at 2:26 p.m., when he was removed to safety by a Secret Service security detail.  Using a  a set of keys, the defendant attempts to open the door to access the Senate Chamber.   After multiple unsuccessful attempts, the defendant then walks around and enters the Senate Chamber through another door.

The defendant enters the Senate Chamber at approximately 2:48 p.m.  While on the floor of the Senate, the defendant tells other rioters to get out of Vice President Pence's chair, and tells them to be respectful.  The defendant yells at fellow rioters, "this is an IO war.  We cannot lose the IO war."  The defendant walks around the Senate chamber for approximately eight minutes, during which time he rifles through paperwork on various Senator's desks.  At approximately 2:56 p.m. the defendant leaves the Senate Chamber.  The defendant then goes upstairs, goes immediately back downstairs, and exits through the Parliamentarian Doors on

the west side of the Capitol at approximately 3:01 p.m.

In January 2022, the FBI executed a lawful search warrant on the Facebook account of the defendant.  Agents discovered multiple messages between the defendant and other Facebook users where he discusses his feelings about the November 3, 2020 Presidential Election.  The messages are in pertinent part:

On November 13, 2020 the defendant wrote,

"I believe the courts will act, but if they don't, are we willing to see the will of the American people be thwarted? What exactly constitutes supporting and defending the Constitution … against all enemies, foreign and domestic.  Does stealing an election through fraud make one a domestic enemy? If so, what are we prepared to do?"

On December 5, 2020 the defendant wrote, "If SCOTUS doesn't act we have two choices.  We can either live in a Communist Country or we can rebel, keep the rightful President in power and demand free and fair elections. #civilwar2021" On January 3, 2021, the defendant wrote, in part, "Biden won't be inaugurated.  We will ensure that on the 6th."  On January 5, 2021 the defendant wrote, "our second American Revolution begins in less than two days".

## A.  Elements of the Crimes Alleged

The Indictment charges one offense under 18 U.S.C. § 1512(c)(2) and 2, two offenses under 18 U.S.C. § 1752 and three offenses under 40 U.S.C. § 5104.  The elements of those offenses are as follows.

## i.    Obstruction of an Official Proceeding

Count One of the Indictment charges the defendant with corruptly obstructing an official proceeding, which is a violation of federal law. Count 1 also charges the defendant with attempt to obstruct or impede an official proceeding and aiding and abetting others to commit that offense.

In order to find the defendant guilty of corruptly obstructing an official proceeding, the Court must find that the government proved each of the following four elements beyond a

reasonable doubt:

1. First, the defendant attempted to or did obstruct or impede an official proceeding.

2. Second, the defendant acted with the intent to obstruct or impede the official proceeding.

3. Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

4. Fourth, the defendant acted corruptly.

The term "official proceeding" includes a proceeding before the Congress. The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant. As used in Count 1, the term "official proceeding" means Congress's Joint Session to certify the Electoral College vote.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did or said.

To act "corruptly," the defendant must use unlawful means or act with an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong. Not all attempts to obstruct or impede an official proceeding involve acting corruptly.  For example, a witness in a court proceeding may refuse to testify by invoking his constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but he does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing

7

a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct with the intent to obstruct or impede a proceeding, does act corruptly.

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct justice is not negated by the simultaneous presence of another purpose for his conduct.  However, the fact that the defendant's mere presence may have had the unintended effect of obstructing or impeding a proceeding does not establish that the defendant acted with the intent to obstruct or impede that proceeding.  In order to convict the defendant of this charge, you must find that the defendant corruptly intended to obstruct or impede a proceeding.

Attempt: In Count One, the defendant is also charged with attempt to commit the crime of obstruction of an official proceeding. An attempt to commit obstruction of an official proceeding is a crime even if the defendant did not actually complete the crime of obstruction of an official proceeding.

In order to find the defendant guilty of attempt to commit obstruction of an official proceeding, you must find that the government proved beyond a reasonable doubt each of the following two elements:

First, that the defendant intended to commit the crime of obstruction of an official proceeding, as I have defined that offense above.

Second, that the defendant took a substantial step toward committing obstruction of an official proceeding which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, you may not find the defendant guilty of attempt to commit obstruction of an official proceeding merely because he thought about it. You must find that the evidence proved beyond a reasonable doubt that the defendant's mental state

8

passed beyond the stage of thinking about the crime to actually intending to commit it.
With respect to the substantial step element, you may not find the defendant guilty of attempt to
commit obstruction of an official proceeding merely because he made some plans to or some
preparation for committing that crime. Instead, you must find that the defendant took some firm,
clear, undeniable action to accomplish his intent to commit obstruction of an official proceeding.
However, the substantial step element does not require the government to prove that the defendant
did everything except the last act necessary to complete the crime.

   Aiding and Abetting: In this case, the government further alleges that the defendant aided
and abetted others in committing obstruction of an official proceeding as charged in Count 1. A
person may be guilty of an offense if he aided and abetted another person in committing the
offense. A person who has aided and abetted another person in committing an offense is often
called an accomplice.  The person whom the accomplice aids and abets is known as the principal. It
is not necessary that all the people who committed the crime be caught or identified. It is sufficient
if you find beyond a reasonable doubt that the crime was committed by someone and that the
defendant knowingly and intentionally aided and abetted that person in committing the crime.
In order to find the defendant guilty of obstruction of an official proceeding because he aided and
abetted others in committing this offense, you must find that the government proved beyond a
reasonable doubt the following five requirements:

   First, that others committed obstruction of an official proceeding by committing each of the
elements of the offense charged, as I have explained above.

   Second, that the defendant knew that obstruction of an official proceeding was going to be
committed or was being committed by others.

   Third, that the defendant performed an act or acts in furtherance of the offense.

   Fourth, that the defendant knowingly performed that act or those acts for the purpose of

aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding.

## ii.    Entering or Remaining in a Restricted Building or Grounds

Count Two of the Indictment charges the defendant with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.  First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2.  Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant knowingly entered or remained in a restricted building or grounds, the Court may consider all of the evidence, including what the defendant did or said.[2]

## iii.  Disorderly or Disruptive Conduct in a Restricted Building or Grounds

Count Three of the Indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find the

---

[2] *See* Seventh Circuit Pattern Criminal Jury Instructions; *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005).

defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[3]

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Count One.

**iv.   Entering and Remaining on the Floor of Congress**

Count Four of the indictment charges the defendant with entering and remaining on the floor of Congress.  In order to find the defendant guilty of entering and remaining on the floor of Congress, you must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained on the floor of a House of Congress

---

[3] Redbook 6.643.

without authorization to do so.

2.  Second, that the defendant acted willfully and knowingly.

The term "knowingly" has the same meaning as that described for Count 1.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

**v.      Disorderly Conduct in a Capitol Building**

Count Five of the Indictment charges the defendant with disorderly and disruptive conduct in a Capitol Building, which is a violation of federal law.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

1.  First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

2.  Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

3.  Third, that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.[4]

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Two defining "disorderly conduct" and "disruptive conduct."

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant

_____

[4] 40 U.S.C. § 5101

be aware of the specific law or rule that his conduct may be violating.[5]

The term "knowingly" has the same meaning described in the instructions for Count One.

**vi.    Parading, Demonstrating, or Picketing in a Capitol Building**

Count Six of the Indictment charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

2. Second, that the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings.  The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[6]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings described in the instructions for Counts One and Three.

**II.  THE PARTIES' EVIDENCE AND ANTICIPATED DEFENSES**

The parties are mutually committed to trying the case expeditiously and without lengthy arguments about objections. The government has met and conferred with defense counsel about the evidence it plans to present. Based on that meeting, the government expects that all, or nearly all, of its evidence will be admitted without objection. Likewise, based on defense counsel's representations about his plan for trial, the government expects that it would not object to most of

---

[5] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).
[6] *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

the defendant's exhibits. The government may nonetheless object to particular portions of exhibits, or particular questions about exhibits.

The government does not expect the defendant to raise factual or legal arguments about the location or the movement of the Vice President, the timing of the Vice President's business, whether the existence of the Vice President's ceremonial office prevent him from visiting the Capitol temporarily, or any other such technical argument. Instead, the government anticipates that the defense will focus on the defendant's actions and his *mens rea*.

**III. CONCLUSION**

The defendant joined the mob that entered the U.S. Capitol building on January 6, 2021. He entered the building after it had been breached, with knowledge that the breach had happened; he entered to join a crowd that was seeking to stop the certification of the Electoral College vote. The defendant maneuvered throughout the Capitol building, finding his way to, and entering the Senate Chamber where he remained for approximately 7-8 minutes. At trial, the evidence will prove beyond a reasonable doubt that he committed each offense charged in the Information.

Respectfully Submitted,
MATTHEW M. GRAVES
United States Attorney

FOR THE UNITED STATES

/s/ April Ayers-Perez
April Ayers-Perez
TX Bar No.: 24090975
Douglas Meisel
Barry Disney
Trial Attorneys (Detailees)
U.S. Attorney's Office – DC
601 D St, NW
Washington, D.C.
April.AyersPerez@usdoj.gov
(202) 894-4237

15