VOLUME III
UNITED STATES  DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                          21-CR-140

LARRY RENDALL BROCK,

                         Defendant.

-------------------------------------------x

        Transcript of a Bench Trial held on

November 16, 2022, at the E. Barrett Prettyman U.S.

Courthouse, 333 Constitution Avenue, N.W.,

Washington, D.C., the HONORABLE JOHN D. BATES,

Senior Judge, Presiding.

                    A P P E A R A N C E S

For The Government: UNITED STATES ATTORNEY'S OFFICE
                    SOUTHERN DISTRICT OF TEXAS
                    11204 McPherson Road
                    Suite 100a
                    Laredo, Texas  78045
                      BY:  APRIL AYERS-PEREZ, ESQ.

                    U.S. DEPARTMENT OF JUSTICE
                    1331 F Street, N.W.
                    Washington, D.C.  20005
                      BY:  BARRY KENT DISNEY, ESQ.

                    U.S. DEPARTMENT OF JUSTICE
                    Narcotic & Dangerous Drug Section
                    145 North Street, N.E., Suite 2300
                    Washington, D.C.  20530
                      BY:  DOUGLAS MEISEL, ESQ.

For Defendant:      BURNHAM & GOROKHOV, PLLC
                    Attorneys at Law
                    1424 K St., N.W.
                    Suite 500
                    Washington, D.C.  20005
                      BY:  CHARLES BURNHAM, ESQ.

1                    (Open Court, 10:03 a.m.)

2          THE CLERK:  Your Honor, we have criminal action

3    21-140, United States of America versus Larry Brock, and all

4    counsel are present.

5              THE COURT:  All right.  Good morning to everybody.

6              MR. BURNHAM:  Good morning, your Honor.

7              THE COURT:  It's now my responsibility to rule on

8    certain things.  Under Criminal Rule 23, specifically 23(c)

9    for a nonjury trial, I'm obliged to find whether defendant is

10   guilty or not guilty on each of the charged offenses.  That

11   rule also provides that, if a party requests, then the Court

12   must state its specific findings of fact in open court or in

13   a written decision or opinion.  No one's requested it, but

14   I'm going to do it anyway and give you a fairly fulsome

15   review of the case in ruling on what is my responsibility to

16   rule on, which is resolution of the Rule 29 motion and, if

17   that is denied, then addressing the defendant's guilt or

18   innocence on each of the charges.

19              Now many motions and cases turn on resolution of

20   factual issues.  This case does not.  There's little dispute

21   as to what Mr. Brock said and what he did on January 6th,

22   2021.  The question is more what his statements and conduct

23   mean and did his conduct on January 6th violate the law.

24   These are largely questions of his intent and whether he

25   acted knowingly in certain contexts.

1          I will say as I begin that for the most part, I

2     reject the, what I'll call the innocent interpretations

3     offered by the defense with little evidence in the record to

4     support those positions.

5          So first with respect to Rule 29, Rule 29(a) of the

6     Federal Rules of Criminal Procedure provides that "[a]fter

7     the government closes its evidence or after the close of all

8     the evidence, the Court on the defendant's motion must enter

9     a judgment of acquittal of any offense for which the evidence

10    is insufficient to sustain a conviction."  Now I will treat

11    the Rule 29 motion as it was made, which was at the close of

12    the government's case, and as renewed at the close of the

13    defense case, which consisted only of the introduction of a

14    couple of exhibits.  When ruling on a motion for judgment of

15    acquittal, the Court must "consider[] the evidence in the

16    light most favorable to the government and determin[e]

17    whether, so read, it is sufficient to permit a rational trier

18    of fact to find all of the essential elements of the crime

19    beyond a reasonable doubt."  And that's a quote from *United*

20    *States v. Kayode*, 254 F.3d 204, jump cite 212-13, D.C.

21    Circuit 2001, which itself is quoting *United States v.*

22    *Harrington*, 108 F.3d 1460, jump cite 1464, D.C. Circuit 1997.

23    The Court must "accord[] the government the benefit of all

24    legitimate inferences" and deny the motion if "any rational

25    trier of fact could have found the essential elements of the

1   crime beyond a reasonable doubt."  *United States v. Jabr*,

2   Criminal Number 18-0105, 2019 WL 13110682, at *3, D.D.C.

3   case, May 16, 2019.  That itself quotes *United States v.*

4   *Weisz*, 718 F.2d 413, jump cite 437, D.C. Circuit 1983, and

5   *United States v. Arrington*, 309 F.3d 40, jump cite 48, D.C.

6   Circuit 2002.

7           "The same standard guides a district court in

8   resolving a Rule 29 motion whether in the context of a bench

9   or jury trial."  *Jabr*, at *4.  At the moment of deciding a

10  motion for judgment of acquittal, "this Court is not the

11  trier of fact," *United States v. Recognition Equipment, Inc.*,

12  725 F.Supp. 587, jump cite 588, n.1, D.D.C. 1989.

13  Accordingly, the Court is not yet stepping into the jury's

14  shoes to assess the defendant's guilt or to make any findings

15  about witness credibility but, rather, is "simply applying a

16  legal standard to the government's evidence."  *United States*

17  *v. Recognition Equipment*, 725 F.Supp. at 588, n.1, that same

18  citation.

19          The Court will deny Brock's motion for judgment of

20  acquittal.  I conclude that the Government presented

21  sufficient evidence such that a rational fact finder could

22  find beyond a reasonable doubt that all elements of each of

23  the charges against Brock have been met.  For the sake of

24  brevity, however, the reasons for the Court's denial of the

25  Rule 29(a) motion for judgment of acquittal are the same as

1      the reasons the Court will give in its findings and

2      conclusions in deciding the case and the guilt or innocence

3      of Mr. Brock.  And that's consistent with the approach in

4      *United States v. Rivera*, Criminal Case Number 21-060, ECF

5      Number 63, taking the same approach in denying a Rule 29(a)

6      motion in another January 6th case.

7              Here, in early January 2021, Mr. Brock traveled

8      from Texas to Washington, D.C. where he participated in the

9      riot at the United States Capitol on January 6th.  And I'm

10     now proceeding to address the case itself and the charged

11     offenses and Mr. Brock's guilt or innocence on each of those

12     charged offenses.  The details of his participation were

13     described by witnesses and through evidence presented in this

14     trial over two days.  Specifically, the Government alleges

15     that his conduct on January 6th violated a number of federal

16     statutes, as set out in the six counts in the superseding

17     indictment:  Count One, obstruction of an official proceeding

18     and aiding and abetting in violation of Title 18 of the U.S.

19     Code, Sections 1512(c)(2) and Section 2; Count Two, entering

20     and remaining in a restricted building and grounds in

21     violation of 18 U.S.C. Section 1752(a)(1); Count Three,

22     disorderly and disruptive conduct in a restricted building or

23     grounds in violation of 18 U.S.C. Section 1752(a)(2); Count

24     Four, entering and remaining on the floor of Congress in

25     violation of 40 U.S.C. Section 5104(e)(2)(A); Count Five,

1    disorderly conduct in a Capitol building in violation of 40

2    U.S.C. Section 5104(e)(2)(D); and finally, Count Six,

3    parading, demonstrating, or picketing in a Capitol building

4    in violation of 40 U.S.C. Section 5104(e)(2)(G).

5            So over the last two days, the Government called

6    five witnesses:  Sean Patton, a United States Capitol Police

7    Captain; Elizabeth Glavey, a Secret Service agent who was

8    assigned to then-Vice President Pence's detail; Nairobi

9    Timberlake, a Capitol Police Sergeant, present on duty in the

10   Capitol on January 6th; Maggie-May Humphrey, an MPD officer,

11   also there on that day; and John Moore, a special agent with

12   the FBI, the only one of the five witnesses who was not

13   present at the Capitol on January 6th.  The defense did not

14   call any witnesses.  Special Agent John Moore testified about

15   Facebook messages that he recovered from Mr. Brock's account

16   showing Mr. Brock's reaction to the November 2020 election,

17   which he believed was a "fraud."  Testimony from the other

18   witnesses and videos illustrated the breach of the Capitol

19   that occurred and tracked Mr. Brock's movements throughout

20   the Capitol on the afternoon of January 6th, 2021.  After

21   considering all of this evidence and the arguments of counsel

22   as well, for the reasons that I am now going to explain, I

23   find Mr. Brock guilty on each of the six counts.

24            First with respect to Count One, obstruction of an

25   official proceeding.  Count One of the indictment charges

1    Mr. Brock with corruptly obstructing an official proceeding.

2    To find him guilty of this offense, I must find the following

3    four elements beyond a reasonable doubt:

4              First, that he attempted to or did obstruct or

5    impede an official proceeding;

6              Second, that he acted with the intent to obstruct

7    or impede the official proceeding;

8              Third, that he acted knowingly, with awareness that

9    the natural and probable effect of his conduct would be to

10   obstruct or impede the official proceeding; and

11             Fourth, that he acted corruptly.

12             First, Mr. Brock obstructed Congress' election

13   certification.  He was part of the large crowd of

14   demonstrators who breached the Capitol on January 6th during

15   the election certification proceedings.  That's set out in

16   Government's Exhibit 708.  And I'm going to give citations to

17   exhibits on occasion throughout this.  As we heard from Agent

18   Glavey, this breach caused Congress to adjourn its session

19   because it was no longer safe for members of Congress to be

20   in the Capitol.  Glavey transcript at 37-41.  And although

21   Mr. Brock entered the Capitol after Congress had at least in

22   part adjourned, he was part of the greater mob that breached

23   the Capitol, which caused the proceedings to be adjourned and

24   not to be continued in the short term.  Government's

25   Exhibit 708.  Moreover, after breaching the Capitol,

1    Mr. Brock remained in the building for approximately 37

2    minutes, during which time his presence, along with the

3    presence of many others, continued to obstruct the proceeding

4    by preventing Congress from reconvening.  Government's

5    Exhibit 708.  In fact, Mr. Brock was on the floor of the

6    Senate where the proceedings should have been occurring had

7    the crowd not breached and entered the Capitol.

8             Other cases in this district have found that

9    actions like that of Mr. Brock's constituted obstruction of

10   an official proceeding.  Examples, in *United States v.*

11   *Reffitt*, Criminal Case Number 21-32, at 2022 WL 1404247, the

12   Court upheld a jury's verdict that a defendant who did not

13   even enter the Capitol building could nonetheless be found

14   guilty under Section 1512(c)(2) because "by leading a crowd

15   to breach the police line, [the defendant] helped to halt,

16   and thus obstruct, Congress' Joint Session."  In *United*

17   *States v. Rivera*, Criminal Case Number 21-060, citation 2022

18   WL 2187851, June 17th, 2022 decision, the Court rejected the

19   defendant's arguments that he did not in fact obstruct

20   congressional proceedings because both Houses of Congress had

21   recessed by the time that he entered the Capitol.  The Court

22   found this argument failed because "proceedings could not

23   recommence until the entire building was secured and cleared

24   of rioters.  Indeed, even the presence of one unauthorized

25   person in the Capitol is reason to suspend Congressional

1    proceedings."  That's jump cite in the *Rivera* case at *6.

2    The Court continued to explain that "[m]any rioters

3    collectively disrupted Congressional proceedings, and each

4    individual rioter contributed to that disruption."  Id.,

5    that's a citation to the same page in *Rivera*.

6          Moreover, in my earlier decision in this case,

7    August 31st memorandum opinion denying various defense

8    motions, I explained that "[t]he joint session continued to

9    be obstructed, influenced, and impeded even after Vice

10   President Pence and Members of Congress had fled, as it

11   continued to remain in limbo as the January 6 mob flooded the

12   Capitol throughout the day."  *United States v. Brock*,

13   Criminal Case Number 21-140, the citation 2022 WL 3910549.

14         Now second, Mr. Brock acted with the intent to

15   obstruct or impede the election certification when he

16   breached the Capitol building.  His Facebook messages show

17   that he intended to obstruct proceedings at the Capitol on

18   January 6th.  Some of the more probative messages include the

19   following:

20         December 6, 2020, "We need to restore the

21   Constitution and the best and shortest way is to go offensive

22   on the Communists that stole it, aka the Democratic Party."

23   That's Government's Exhibit 906.

24         December 18, 2020, "I want to actively rebel," in

25   response, this was in response to his friend's message

1    regarding Biden "steal[ing] the election."  Government's

2    Exhibit 909.

3              Third, December 24th, 2020.  Outlining a "Plan of

4    Action if Congress fails to act on January 6th:  Seize all

5    democratic politicians and Biden and key staff."... "Do not

6    kill LEO unless necessary."  And LEO stands for law

7    enforcement officers.  So I'll repeat that.  "Do not kill law

8    enforcement officers unless necessary.  Gas would assist in

9    this if we can get it."  Another quote, "Attempt to capture

10   Democrats with knowledge of coup."  And that's from

11   Government's Exhibit 910.

12             Next, December 26, 2020, we're moving up towards

13   January 6th, we're now about two weeks from January 6th.

14   Little less than two weeks.  "Those are the last two peaceful

15   options," referring to Congress or the Supreme Court acting

16   to overturn the election results.  Government's Exhibit 911.

17             Next, December 27th, 2020.  "I prefer outright

18   insurrection at this point," in response to his friend saying

19   that "[r]iots are for chimps."  Mr. Brock then said that he

20   "[b]ooked the hotel.  Now need to book flights" to "DC on the

21   5th-7th."  That's Government's Exhibit 913.

22             Next, December 28, 2020, "Want to see some panic.

23   Start playing the Purge Siren outside the Capitol on 6

24   January 2021.  Watch Nancy flee."  That's Government's

25   Exhibit 913 as well.

1          January 1st, 2021.  "Help is on the way.  6

2     January 2021.  #MAGA, #StormtheCastle."  That's Government's

3     Exhibit 914.

4          And on January 5th, 2021, "Our second American

5     Revolution begins in less than 2 days."

6          Going further, "Biden won't be inaugurated.  We

7     will ensure that on the 6th."  Those are both from

8     Government's Exhibit 915.

9          Taken together, these messages indicate that

10     Mr. Brock came to the Capitol on January 6th with the intent

11     to obstruct Congress' certification of the 2020 election

12     results.

13          In addition, Mr. Brock's choice to outfit himself

14     in tactical gear and a helmet shows that he expected that

15     events might get violent inside or outside the Capitol on

16     January 6th -- there is no evidence in the record that

17     Mr. Brock wore this gear to protect himself from

18     counter-protesters.  There may be some evidence that there

19     were occasional clashes in other contexts between protesters

20     on one side and another but there's no evidence that that's

21     why he wore this tactical gear, and I reject the unsupported

22     view of defense counsel that that's the explanation for why

23     he wore the tactical gear.

24          Further, it is implausible that Mr. Brock's intent

25     was simply to support Congress members in objecting to the

1    election results.  That is not consistent with his

2    communications in advance of January 6th.  And Mr. Brock's

3    actions of breaching the Capitol building, which caused the

4    proceedings to stop, meaning no Congress members could object

5    because the proceeding had ceased, cannot reasonably be

6    construed to be just in aid of Congress.  Excuse me.

7           In any event, "[t]he law permits the factfinder to

8    infer that a person intends the natural and probable

9    consequences of their actions."  That's from *United States v.*

10   *Mejia*, 597 F.3d 1329, jump cite 1341, D.C. Circuit 2010, and

11   it is reasonable that Mr. Brock would have expected that

12   breaching the Capitol building during the election

13   certification proceedings would cause those proceedings to

14   halt during the period in which there were unauthorized

15   people, many people, including himself, within the Capitol

16   building roaming the halls of the Capitol and at the

17   locations of events that were to take place in the Capitol in

18   the context of certification of the election proceedings.

19          Third, Mr. Brock acted knowingly, with awareness

20   that the natural and probable effect of his conduct would be

21   to obstruct or impede the official proceeding.  A person acts

22   "knowingly" if he realizes what he is doing and is aware of

23   the nature of his conduct, and does not act through

24   ignorance, mistake, or accident.  As discussed already in the

25   second element, it is reasonable to conclude that Mr. Brock

1   was aware that his actions in entering the Capitol would have

2   the probable effect of obstructing the election certification

3   that day.

4          Fourth, I find that Mr. Brock acted corruptly.

5   "[Courts] in this district have construed 'corruptly' to

6   require a showing of dishonesty, an improper purpose, [or]

7   consciousness of wrongdoing."  And that's a quote from *United*

8   *States v. Puma*, Criminal Case 21-0454, citation is 2022 WL

9   823079, at *10, a D.D.C. case decision, March 19, 2022.  And

10  that quotation was cleaned up a little bit.  As discussed in

11  the second element, Mr. Brock's Facebook messages support

12  that he knew obstructing the election certification on

13  January 6th was improper.  Mr. Brock's Facebook posts leading

14  up to January 6th suggest that he was prepared to break the

15  law to achieve his goals -- saying, for example, "If

16  necessary I aim to misbehave," that's Government's

17  Exhibit 905, or that he thinks it may be necessary to

18  "restore the Republic through force of arms," that's

19  Government's Exhibit 908.  Mr. Brock knew that some actions

20  he contemplated were illegal -- describing a plan to have

21  "several hundred[] thousand Patriots descend[] on dc refusing

22  to let Biden be inaugurated," which his friend acknowledged

23  would amount to "load[ing] up our trucks and go[ing] to DC

24  and hop[ing] we don't get arrested."  That's from

25  Government's Exhibit 909.  Specifically, in reference to

1    January 6th, he used the hashtag #StormtheCastle, indicating
2    that he knew any attempts to enter the Capitol would require
3    "storming" it, which would, of course, be illegal.
4    Government's Exhibit 914.  The messages also refer to
5    Mr. Brock's desire to engage in "insurrection" and
6    rebel[lion]," and also allude to taking violent action, such
7    as "going offensive" on Democrats, "seiz[ing]" Democratic
8    politicians, and even killing law enforcement officers "if
9    necessary."  Mr. Brock also refers to action by Congress or
10   the Supreme Court as the "last two peaceful options" in
11   response to what he perceived to be fraudulent election
12   results.  Moreover, as discussed above, Mr. Brock's outfit of
13   tactical gear tends to show that he believed violence was a
14   possibility at the Capitol on January 6th.
15        Now I don't necessarily believe that Mr. Brock
16   intended to do everything that he said in his Facebook posts.
17   I think it's unlikely that he did.  Indeed, that would be a
18   stretch to believe that he did.  But there's enough in there
19   to indicate that he clearly intended to take very purposeful
20   actions to interfere with any certification of the election,
21   and even to take actions that bordered on violent conduct and
22   improper steps to impede the Congressional action of
23   certification of the election.
24        Hence, for all these reasons, I find that Mr. -- I
25   find Mr. Brock guilty on Count One, obstruction of an

1    official proceeding, and I find that beyond a reasonable

2    doubt.

3          Count Two, which is entering or remaining in a

4    restricted building or grounds.  That's Title 18 of the U.S.

5    Code Section 1752(a)(1).  That count charges Mr. Brock with

6    entering or remaining in a restricted building or grounds.

7    To find him guilty, I must find the following elements beyond

8    a reasonable doubt:  That he entered or remained in a

9    restricted building or grounds without lawful authority to do

10   so; and that he did so knowingly.

11         First, Mr. Brock entered or remained in a

12   restricted building or grounds without lawful authority to do

13   so.  A "restricted building or grounds" is defined as any

14   posted, cordoned-off, or otherwise restricted area of a

15   building or grounds where a person protected by the Secret

16   Service is temporarily visiting.  It is undisputed that

17   Mr. Brock entered the Capitol building at 2:24 p.m. on

18   January 6th and remained in the Capitol building for

19   approximately 37 minutes.  Government's Exhibit 708.  And the

20   evidence at large in this case establishes that.  The parties

21   do not, and could not, reasonably dispute that the Capitol

22   building and parts of the Capitol grounds were restricted on

23   January 6.  Testimony from United States Capitol Police

24   Captain Sean Patton showed that the innermost parts of the

25   Capitol grounds were barricaded with snow fences, bike racks,

1   and at points with police lines on January 6th.  And the
2   Capitol building itself is restricted to unauthorized -- is
3   restricted from entry by unauthorized persons, and
4   unauthorized members of the public must go through security
5   before entering the building.  Mr. Brock was not authorized
6   to enter the U.S. Capitol building on January 6th.

7           Second, Mr. Brock did so knowingly.  It is
8   reasonable that he would have observed the toppled
9   barricades, including snow fences, bike racks, and the broken
10  police lines that were protecting the perimeter of the
11  Capitol grounds on January 6th as he approached the building.
12  Those were in place early on the morning of January 6th.
13  Ultimately, they were breached by the thousands of rioters
14  who came to the Capitol.  Mr. Brock was part of that mob and
15  as he proceeded to the Capitol, there's no question that he
16  would have observed those breached perimeters, including snow
17  fences, bike racks, and the like.  And indeed, he was then
18  part of the mob that was stopped for several minutes by a
19  police line at the Lower West Terrace, before that mob broke
20  through and continued to the Capitol building.  Moreover,
21  once Mr. Brock reached the Capitol building, he entered
22  through doors that had been forced open, that were flanked by
23  windows that had been broken, broken out completely in some
24  instances, and there were other demonstrators entering
25  through the broken glass windows on either side of him as he

1     entered through the door that had also been broken open.  The

2     evidence shows that he would have observed rioters entering

3     through those broken glass windows as he ascended to the

4     Senate Wing Doors, since rioters first broke the windows

5     approximately 11 minutes before Mr. Brock entered the

6     building, and rioters are shown to have come through those

7     windows shortly before and as Mr. Brock entered the building.

8     Mr. Brock then remained in the Capitol for some time after

9     seeing officers guarding the East Rotunda doors, this is in a

10    later video exhibit, and those doors were flanked or included

11    broken windows and he observed rioters attempting to break

12    through to enter with police standing there to try to prevent

13    them from doing so at those East Rotunda doors.  So all of

14    this evidence, taken together, is sufficient to prove that

15    Mr. Brock knowingly, and without authority, entered the

16    Capitol grounds and building which were restricted.

17          Hence, I find Mr. Brock guilty on Count Two,

18    entering or remaining in a restricted building or grounds,

19    beyond a reasonable doubt.

20          Count Three.  Disorderly or disruptive conduct in a

21    restricted building.  This is Title 18 of the U.S. Code

22    1752(a)(2).  Count Three charges Mr. Brock with disorderly or

23    disruptive conduct in a restricted building or grounds.  To

24    find him guilty, the Government must prove each of the

25    following elements beyond a reasonable doubt:

1          First, that he engaged in disorderly or disruptive

2     conduct in, or in proximity to, any restricted building;

3          Second, that he did so knowingly, and with the

4     intent to impede or disrupt the orderly conduct of Government

5     business or official functions; and

6          Third, that his conduct in fact impeded or

7     disrupted the orderly conduct of government business or

8     official functions.

9          First, Mr. Brock engaged in disorderly or

10    disruptive conduct in, or in proximity to, any restricted

11    building.  For the reasons discussed with respect to Count

12    Two, the Government has proved that the defendant's actions

13    in the Capitol took place in a "restricted building or

14    grounds."  The terms "disorderly" and "disruptive" are not

15    defined in the statute and are given their plain meanings.

16    "Disorderly" conduct is that which "tends to disturb the

17    public peace, offend public morals, or undermine public

18    safety."  That comes from the definition of disorderly in

19    *Black's Law Dictionary*, 9th Edition, 2009.  Examples of this

20    conduct that have been included in jury instructions in other

21    January 6th cases include when a person acts in such a manner

22    as to cause another person to be in reasonable fear of harm,

23    uses words likely to produce violence on the part of others,

24    is unreasonably loud and disruptive under the circumstances,

25    or interferes with another person by jostling against or

1    unnecessarily crowding that person.  Conduct is "disruptive"

2    if it interrupts an event, activity, or the normal course of

3    process.  That's the *Redbook*, Instruction 6.643.

4         "Disruptive" is thus a pretty low bar --

5    particularly in the context of January 6th, when, in fact,

6    there was a huge amount of disruption to the proceedings of

7    Congress.  In fact, one judge in this District has found

8    that, "[e]ven mere presence in an unlawful mob or riot is

9    both (1) 'disorderly' in the sense that it furthers the mob's

10   'disturb[ing] the public peace' and (2) 'disruptive' insofar

11   as it disturbs the normal and peaceful condition of the

12   Capitol grounds and buildings, its official proceedings, and

13   the safety of its lawful occupants."  That comes from *United*

14   *States v. Rivera*, which I think I've cited before, the

15   specific jump cite is *5.

16        This conclusion -- that mere presence in a mob

17   rises to the level of disorderly or disruptive -- makes sense

18   because of the nature of a mob, particularly the mob we're

19   considering with respect to January 6th, 2021.  A mob, like

20   the one on January 6th, is made up of individual members, and

21   each individual member increases its power and its disruptive

22   force.  As Judge Kollar-Kotelly explained in the *Rivera* case,

23   "Just as heavy rains cause a flood in a field, each

24   individual raindrop itself contributes to that flood.  Only

25   when all of the floodwaters subside is order restored to the

1    field."  That's from the same jump cite at *5.

2         Even if mere presence wasn't enough, Mr. Brock

3    actually did more than just be present in the Capitol.  He

4    traveled throughout the Capitol to many different locations,

5    wandering about, including going to some sensitive areas, one

6    of which was the Senate floor itself.  And that in itself

7    would disrupt the proceedings.  His presence on the Senate

8    floor ensured that the certification continued to be

9    disrupted because certain parts of the proceedings had to

10   take place on the Senate floor.  He also carried flex cuffs,

11   he yelled, which would be construed and considered as

12   unreasonably loud, one way that behavior may be disorderly,

13   and that took place on the Senate floor, adding a further

14   element of chaos and disruption to the events in the Capitol.

15        Mr. Brock engaged in disorderly and disruptive

16   conduct knowingly, and with the intent to impede or disrupt

17   the orderly conduct of government business or official

18   functions.  As to "knowingly," Mr. Brock could look around

19   and realize that he was part of a mob.  The evidence shows

20   that he knew that Congress was certifying the election that

21   day, a proceeding which would not be open to the public, and

22   that he was not allowed on the Senate floor -- for example,

23   at one point he tried to use keys, we don't know where the

24   keys came from, but he tried to use keys to open a locked

25   door labeled "United States Senate."  Although he didn't know

1    it, people will be familiar with that door because the video

2    that has been shown not only during this trial but frequently

3    in the public media is the door through which the Vice

4    President was escorted downstairs as he fled from the Senate

5    Chamber.  At one point, Mr. Brock observed Sergeant

6    Timberlake in an altercation with other rioters.  Although he

7    was not involved in that altercation -- and in fact the

8    evidence shows that he tried to calm the protesters -- he

9    nevertheless continued to walk through the Capitol with full

10   knowledge that law enforcement and the protesters were

11   clashing at various points.  Thus, I find that he acted

12   knowingly and with full awareness of the consequences of his

13   decisions.

14          For many of the same reasons, I also find that

15   Mr. Brock acted "with the intent to impede or disrupt the

16   orderly conduct of government business or official

17   functions."  While the language is not identical, that

18   language coming from this provision of the 1752(a)(2), it's

19   not identical to the language relevant to Count One, a

20   finding that Mr. Brock acted with "intent to obstruct or

21   impede an official proceeding" as required in Count One under

22   Section 1512(c) would, in this case, necessarily mean that he

23   also had intent to disrupt orderly government business for

24   purposes of Count Three.  The certification was both an

25   "official proceeding" -- as required by Section 1512 -- and

1   an instance of "orderly conduct of government business or

2   official functions," as required by Count Three.  I

3   accordingly find that the Government has proven this element

4   beyond a reasonable doubt.

5           Finally, Mr. Brock's conduct in fact impeded or

6   disrupted the orderly conduct of government business or

7   official functions.  As discussed in the discussion of Count

8   One, the certification -- an official government function --

9   was in fact impeded or disrupted.  Simply by being in the

10   mob, Mr. Brock's conduct assisted in disrupting the

11   certification.  But even further, his presence on the Senate

12   floor necessarily disrupted the certification -- had the

13   protesters, Mr. Brock included, cleared the Senate floor and

14   the Capitol building, the certification would have continued.

15   Which it did, but only much, much later in the day on

16   January 6th; indeed, late in the evening.  Hence, I find that

17   his conduct did in fact impede or disrupt the orderly conduct

18   of government business or official functions on that day.

19           Hence, I find Mr. Brock guilty on Count Three,

20   disorderly or disruptive conduct in a restricted building,

21   and I find that beyond a reasonable doubt.

22           Count Four, which charges Mr. Brock with entering

23   and remaining on the floor of Congress in violation of Title

24   40 of the U.S. Code, Section 5104(e)(2)(A).  To find him

25   guilty on this count, the Government must prove two elements

1    beyond a reasonable doubt:

2            First, that he entered or remained on the floor of

3    a House of Congress without authorization to do so; and

4            Second, that he acted willfully and knowingly.

5            First, Mr. Brock entered or remained on the floor

6    of a House of Congress without authorization to do so.  The

7    Government has proven this beyond a reasonable doubt -- video

8    evidence shows him on the Senate floor, and he was not

9    authorized to be there.

10           Second, Mr. Brock acted willfully and knowingly.

11   As discussed earlier, Mr. Brock certainly knew that he was on

12   the Senate floor.  Indeed, he identifies the Vice President's

13   chair which is where the Vice President sits when he is

14   presiding over the certification in the Senate, and at one

15   point, he sees a sign on a door to the floor labeled United

16   States Senate.

17           The evidence also supports a finding Mr. Brock

18   acted "willfully."  "Willfully" requires the intent to do

19   something that the law forbids, that is, to disobey or

20   disregard the law.  As discussed at length in Count One, his

21   Facebook posts leading up to the January 6th events suggest

22   that he was prepared to break the law to achieve his goals.

23   While those messages were all hypotheticals, Mr. Brock's

24   conduct on January 6th confirms that he knew he was not

25   authorized to be on the Senate floor.  He passed by police

1    while walking through the Capitol, including police guarding

2    broken windows in the East Rotunda doors, and on the Senate

3    floor, he yelled about the group's mission in coming to the

4    Capitol:  To stop the alleged stealing of the 2020 election,

5    a mission he indicated in his Facebook messages he knew may

6    have to happen with force and illegally.  At one point, he

7    uses keys to try to gain entry to a locked door clearly

8    leading to the Senate floor.  Given the context of

9    January 6th and the scenes he walked by on his way into and

10   around the Capitol, it is unfathomable that Brock believed

11   that he was authorized to be on the Senate floor.  Thus, I

12   find that Mr. Brock entered and remained on the Senate floor

13   willfully.

14            Hence, I find him guilty on Count Four, entering

15   and remaining on the floor of Congress, beyond a reasonable

16   doubt.

17            Count Five charges Mr. Brock with disorderly or

18   disruptive conduct in a Capitol building, that's in violation

19   of Title 40 of the U.S. Code, Section 5104(e)(2)(D).  To find

20   him guilty of this offense, the Government must prove three

21   elements beyond a reasonable doubt:

22            Number one, that he engaged in disorderly or

23   disruptive conduct in any of the United States Capitol

24   buildings;

25            Number two, that he did so with the intent to

1    impede, disrupt, or disturb the orderly conduct of a session

2    of Congress or either House of Congress;

3            And number three, that he acted willfully and

4    knowingly.

5            For the reasons already discussed, Mr. Brock's

6    "mere presence in an unlawful mob or riot," and specifically

7    the mob at and in the Capitol on January 6th, was disorderly

8    and disruptive.  And that's consistent with the *United States*

9    *v. Rivera* and I've cited before.  Further, I've already

10   concluded that his specific actions once inside the Capitol

11   building were disruptive.

12           Second, Mr. Brock did so with the intent to impede,

13   disrupt, or disturb the orderly conduct of a session of

14   Congress or either House of Congress.  According to a

15   stipulation of the parties, on January 6th, "a joint session

16   of Congress was convened to fulfill its constitutional and

17   statutory responsibilities to count the Electoral College

18   votes" and declare the winner of the 2020 Presidential

19   election.  That's Government's Exhibit 702, paragraph 4.  In

20   relation to Counts One and Three, I've concluded that

21   Mr. Brock acted with intent to obstruct or impede an official

22   proceeding, and with the intent to impede or disrupt the

23   orderly conduct of government business or official functions.

24   Again, that was his clear purpose as indicated in both his

25   pre-January 6th statements and his conduct on January 6th.

1    For the reasons addressed in relation to those counts, I find

2    that Mr. Brock's conduct assisted in the mob's disruption of

3    the joint session of Congress convened to certify Electoral

4    College votes.  Accordingly, I conclude that Mr. Brock acted

5    with the intent to disrupt the orderly conduct of a session

6    of Congress.

7            Third, Mr. Brock acted willfully and knowingly.

8    For the reasons given in relation to Count One, I have

9    concluded that Mr. Brock obstructed an official proceeding --

10   the certification of Electoral College votes in a Joint

11   Session of Congress -- and that he did so "knowingly" and

12   "corruptly."  Courts in this district have defined the term

13   "corruptly" to include acting with "consciousness of

14   wrongdoing" or "improper purpose."  One such case is *United*

15   *States v. Puma* that I have cited before, and that's a jump

16   cite at *10.  As discussed in reference to Count Four, a

17   person acts "willfully" if he acts with the intent to do

18   something that the law forbids, that is, to disobey or

19   disregard the law.  For the same reasons that I already

20   determined that Mr. Brock obstructed the proceeding

21   "knowingly" and "corruptly" because he acted with an

22   understanding or awareness that what he was doing was wrong,

23   I similarly conclude that he acted "knowingly" and

24   "willfully" with the intent to do something the law forbids.

25           Hence, I find Mr. Brock guilty on Count Five of the

1    indictment, disorderly conduct in a Capitol building, beyond

2    a reasonable doubt.

3            Lastly, Count Six, which charges the defendant with

4    parading, demonstrating, or picketing in the -- in a Capitol

5    building.  To find Mr. Brock guilty of this offense, the

6    Government must prove two elements beyond a reasonable doubt:

7            First, that Mr. Brock paraded, demonstrated or

8    picketed in any of the United States Capitol buildings; and

9            Second, that he acted willfully and knowingly.

10           First, Mr. Brock demonstrated in the U.S. Capitol.

11   The term "demonstrate" in the statute encompasses conduct

12   that would disrupt the orderly business of Congress.  *See*

13   *Bynum v. United States Capitol Police Board*, 93 F.Supp.2d 50,

14   jump cite 58, D.D.C. case from 2000.  I've already concluded

15   that Mr. Brock's actions while in the Capitol building

16   obstructed an ongoing Congressional proceeding.

17           Moreover, Mr. Brock's arguments effectively concede

18   that he was "demonstrating" in any colloquial sense of the

19   term.  He entered the U.S. Capitol building with a large

20   crowd of individuals who had marched there from a political

21   rally.  They were at the Capitol protesting and attempting to

22   stop the certification of Electoral College votes for

23   President Biden, or then President-Elect Biden, or -- as

24   Mr. Brock described in his Facebook posts -- to "stop the

25   steal."  Not only as they approached the Capitol, but as many

1    of them entered the Capitol, including Mr. Brock, they were

2    engaged in a demonstration, both around and in the Capitol

3    building that sought to, and in fact did, disrupt the orderly

4    business of Congress.  This was a demonstration in any common

5    understanding of that term.

6            Second, Mr. Brock acted willfully and knowingly.

7    For the reasons already discussed in relation to the prior

8    counts, I conclude that Mr. Brock engaged in this

9    demonstration "knowingly" and "willfully."

10           Hence, I find him guilty on Count Six of the

11   indictment, which is parading, demonstrating, and picketing

12   in a Capitol building, and I find that beyond a reasonable

13   doubt.

14           With that, I have addressed all six of the counts

15   and have found Mr. Brock guilty on each of those counts.  And

16   those findings are all based on the evidence of record in

17   this case and on conclusions that I have reached beyond a

18   reasonable doubt.

19           With that, anything from counsel before we set a

20   sentencing date?  Anything from the Government?

21           MS. AYERS-PEREZ:  No, your Honor.

22           THE COURT:  From the defense?

23           MR. BURNHAM:  No, your Honor.

24           THE COURT:  All right.  We need to set a sentencing

25   date, and in this jurisdiction, that's usually about three

1    months these days because of the number of cases that the

2    probation office is dealing with.  So if we go out three

3    months from now, we'll be in February, a month that I have

4    some obligations not only in this building but outside of

5    this building.  But Mr. Bradley, what do you see as a

6    possibility?

7              THE CLERK:  Judge, if my calculation is right, that

8    falls on February 14th, 2023, February 14th.

9              THE COURT:  I think I will be here on that date.

10   It's a double holiday in my family, not only Valentine's Day,

11   and I have another proceeding at 2:00.

12             THE CLERK:  That's right.

13             THE COURT:  So how's the morning of February 14th

14   sound, first for the Government?

15             MS. AYERS-PEREZ:  That works for the Government,

16   your Honor.

17             THE COURT:  And Mr. Burnham, for the defense?

18             MR. BURNHAM:  Fine, your Honor.

19             THE COURT:  All right.  Let's do it at -- how about

20   10:30?

21             MR. BURNHAM:  Good for the defense.

22             THE COURT:  February 14th, 10:30, and we'll need

23   sentencing memos then in advance of that date and if I have

24   them one week in advance on February 7th, that should be

25   sufficient, so sentencing memos are due by February 7th,

1    2023.  All right.

2              The only remaining question for me is then just to

3    address the question of the defendant's status pending

4    sentencing.  Is there any request by the Government to change

5    his status; in other words, to change from release under

6    certain conditions?

7              MS. AYERS-PEREZ:  There is not, your Honor.

8              THE COURT:  All right.  Any request from the

9    defense to change any of those conditions?

10             MR. BURNHAM:  No, your Honor.  I just note for the

11   record that he's done very well and your Honor has stepped

12   him down several times, so --

13             THE COURT:  Yes, he has done fine.  I think there's

14   been no problems of any consequence under the conditions that

15   he's been subjected to, and I will continue him in that

16   release under conditions and expect him to continue to comply

17   with those conditions and I won't even give all the

18   admonitions that I've given before because I know Mr. Brock

19   will bear those in mind.  And you now have a sentencing date

20   on February 14th, it's at 10:30 in the morning, it will be in

21   this courtroom, and you need to be present for that

22   sentencing at that time.  All right.  With that, anything

23   further today from the Government?

24             MS. AYERS-PEREZ:  No, your Honor.

25             THE COURT:  And from the defense?

1          MR. BURNHAM:  No, your Honor.

2          THE COURT:  All right.  I will say to all counsel,

3   thank you for the very excellent presentations.  The evidence

4   was presented fully and fairly, the arguments made

5   conscientiously and creatively, and I appreciate that,

6   commend you all for a job well done in presenting the case.

7   Thank you all.

8          MR. BURNHAM:  Thank you, your Honor.

9               (Court Adjourned, 10:56 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4           I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                         Dated this 28th day of November, 2022.

17

18

19                         /S/ JODI L. HIBBARD

20                         JODI L. HIBBARD, RPR, CRR, CSR
                           Official U.S. Court Reporter
21

22

23

24

25