IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| United States | ) | |
| | ) | |
| v. | ) | NO.  1:21cr140 |
| | ) | |
| Larry Brock | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY TO GOVERNMENT SENTENCING MEMORANDUM**

**ARGUMENT**

The government's sentencing memorandum (ECF 88) makes several allegations that would be cumbersome to respond to during sentencing allocution.  Defendant Larry Brock therefore files this reply to the government's sentencing memorandum to invite the Court to consider the following points:

**I.      The Government's Comparator Cases**

The government offers three cases to the Court as "suitable comparisons."  ECF 88 at 31.  The government offers *United States v. Joshua Pruitt*, *United States v. Jerod Hughes*, and *United States v. Matthew Bledsoe* where the defendant received 55 months, 38 months, and 48 months, respectively.  Further explication of these cases beyond with the government has provided is needed for this Court to undertake a proper disparities analysis.

1. *United States v. Joshua Pruitt*, 21-cr-23-TJK

Mr. Pruitt was a member of the Proud Boys, much of whose leadership is now charged in this Court with sedition.  ECF 66 at 1.  He arrived at the Capitol wearing an

electronic ankle monitor from a recent arrest and was on both probation *and* pretrial release. *Id*. at 2-3. Mr. Pruitt "was on the front lines of some of the earliest confrontations with police inside the Capitol building" and "took part in several standoffs between the mob and police." ECF 66 at 2. Police remember him as an "instigator." *Id*. In the government's words "Pruitt made a calculated choice to use his thickly muscled appearance to communicate to the police they faced a dangerous person." *Id*. at 2.

Upon entering the building, Mr. Pruitt "picked up a wooden sign, lifted it over his head, and hurled it across the room." *Id*. at 28. While in the Crypt, Mr. Pruitt "pointed his finger at police, appearing to taunt the officers" and assumed a "fighting stance." *Id*. In another section of the Capitol Mr. Pruitt "tossed a chair in the direction of the officers." (*Id*. at 34) and told another officer "you better stop eyeballing me." *Id*. at 37. The contrast with Mr. Brock could not be starker: Mr. Pruitt used his bodybuilder physique to intimidate the outnumbered policemen while Mr. Brock was occupied in using his own considerable stature and military bearing to protect both the police and the Capitol.

After being placed on supervision for his case Mr. Pruitt threatened others on social media, had a protective order taken out against him and repeatedly violated curfew. *Id*. at 44. The Court ordered him detained until trial as a result of these violations. *Id*. He received 55 months.

2. *United States v. Jerod Hughes*, 21-cr-106

Jerod Hughes, a former drug dealer, had "several criminal convictions, with the most recent occurring in 2015." ECF 88 at 32. In addition to drug trafficking, his criminal history showed "a pattern of violent conduct." *Id*.

On January 6, after climbing Capitol scaffolding, Jerod Hughes was part of the mob which faced off with officers on the west side of the capitol before the lines were breached. *Id*. at 8. Mr. Hughes watched as others "smashed the windows with their fists and with tools including a stolen police shield" before leaping through the windows himself to become the 8th person to breach the building. *Id*. at 1, 11. Mr. Hughes and others then cooperated to kick the doors open to allow more people to enter. *Id*. at 12.

After entering the Capitol, Mr. Hughes and other rioters chased Officer Eugene Goodman through the Capitol while one of them attempted to bludgeon him with a Confederate flag. *Id*. at 15. Later on Mr. Hughes, his brother and others "linked arms" to advance on a police line while Hughes informed the officers that "we are fucking mad!" *Id*. at 19. In the government's words, "[Mr. Hughes] tone was particularly menacing because the crowd had forced through countless lines of USCP officers before this one, each time successfully." *Id*. at 88. He received 38 months.

3. *United States v. Matthew Bledsoe*, 21-cr-106-BAH

Mr. Bledsoe's background included "several misdemeanor convictions" that were too old to be scored. ECF 228 at 19. He had previously been cited for violating probation for DUI and possession of drug paraphernalia. *Id*. at 228. On January 6, after climbing a wall to the Northwest terrace, Mr. Bledsoe behaved in a disorderly and disrespectful (not to mention risky) manner by physically climbing a statue of Gerald Ford. *Id*. at 2.

After being released by this Court Mr. Bledsoe informed his pretrial officer that he had "more important things to do than communicate with the officer." ECF 228 at 24. He refused to follow instructions or provide information and affected a "disrespectful

attitude" to his probation officers.  *Id*.

Finally, Mr. Bledsoe reportedly offered flagrantly false testimony to the Court about his actions on January 6.  For example, when asked under oath why he yelled "where are those pieces of shit at?" while entering the Capitol, Mr. Bledsoe claimed that he was not referring to politicians but simply meant "where can we go protest at?"  *Id*. at 3.  In the government's description, "[Mr. Bledsoe]'s observations were clearly selective as he remembered helpful details but just could not seem to remember anything that harmed him."  *Id*.  Mr. Bledsoe's disrespect to probation officers, the Court, and his oath to testify truthfully were clearly driving factors in his ultimate sentence.

## II.     Government Commentary on Discarded Flex-Cuffs

The government concedes in a footnote that the flex-cuffs Mr. Brock was famously photographed holding on the Senate floor were actually found by him in a Capitol hallway.  ECF 88 at 20, n. 13.  He did not bring them to the Capitol pursuant to some nefarious plan.

However, the government pointedly states that Mr. Brock did not display the flex cuffs while in the presence of Capitol Police Sgt. Timberlake.  *See*, ECF 88 at 15 ("Sgt. Timberlake also stated that Brock did not have the flex-cuffs out where he could see them"); ECF 15 ("Once Brock was not in the presence of law enforcement, he took the flex cuffs back out and held them in his right hand.").  *Id*. at 16.  Although it is not stated explicitly, the unspoken inference seems to be that Mr. Brock was purposely concealing the cuffs due to consciousness of guilt.

The government's argument is problematic for several reasons.  First, St. Timberlake was in plain clothes at the time, wearing a coat and tie somewhat resembling

the typical attire of a court security officer.  He could easily have been mistaken for Capitol employee, Congressional staffer or even a politician.  It is not clear that Mr. Brock knew he was law enforcement.

More importantly however, as the government acknowledges, Mr. Brock was occupied at that particular time with physically defending Sgt. Timberlake and his colleague from threatening protestors.  *Id*. at 38 ("Brock witnessed other rioters engaging in violence…Brock intervened in the violence").  One of the protesters who Mr. Brock physically prevented from harming Sgt. Timberlake is shown wearing what appears to be some kind of body armor and assuming a fighting stance:



It would be only natural in such a situation for Mr. Brock to have pocketed the

flex cuffs to free up his hands in anticipation of a physical confrontation with this individual.

Finally, the government ignores the fact that its own trial evidence showed Mr. Brock with the flex cuffs in full view of multiple police, as the following picture clearly shows:



The government's arguments notwithstanding, it is clear from all the evidence that Mr. Brock did not retrieve the flex cuffs from the floor in order to do harm.

Respectfully Submitted,

By:

/s/ *Charles Burnham*
Charles Burnham VSB # 72781
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1424 K St. NW, Suite 500
Washington, DC 20005

(202) 386-6920 (phone)
(202) 765-2173
charles@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I have served this filing on the government through the ecf system.

Respectfully Submitted,

By: /s/ *Charles Burnham*
Charles Burnham VSB # 72781
*Attorney for the Accused*
Burnham & Gorokhov, PLLC
1424 K St. NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
charles@burnhamgorokhov.com
