United States District Court
For The District of Columbia

| | |
|---|---|
| **United States of America,** | |
| v. | Case No. 21-cr-140 (JDB) |
| **Larry Rendall Brock,** | |
| Defendant. | |

**Motion for a Sentence Reduction**

Larry Rendall Brock, through counsel, respectfully moves this Court for an indicative ruling under Federal Rule of Criminal Procedure 37 on whether it would reduce his term of imprisonment from 24 months to 18 months (likely modifying his projected release date from December 3, 2024, to June 3, 2024), due to a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting so-called "zero-point offenders." *See* Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023). The government has indicated that it opposes this motion. Given that Mr. Brock seeks a modification to June 3, 2024, which would likely impact his placement into a halfway house at an earlier date (perhaps immediately), he respectfully requests that the Court rule on this matter on an expedited basis.

**Relevant Background**

On November 16, 2022, following a bench trial, the Court found Mr. Brock guilty of six offenses relating to January 6, 2021, including (1) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 1); (2) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 2); impeding ingress and egress in a restricted building or grounds and aiding and abetting, in

1

violation of 18 U.S.C. §§ 1752(a)(3) and 2 (Count 3); (4) entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count 4); (5) disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 5); and (6) impeding passage through the Capitol Grounds or Buildings and aiding and abetting, in violation of 40 U.S.C. §§ 5104(e)(2)(E) and 2 (Count 6).

At the time, the U.S. Sentencing Guidelines recommended 15 to 21 months' imprisonment, as he had a total offense level of 14 and zero criminal history points. *See* PSR ¶ 69. The government sought an additional 8-point enhancement under U.S.S.G. § 2J1.2(b)(1)(B)—which applies "[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice"—arguing that Mr. Brock made violent statements leading up to January 6, 2021. The Court rejected the government's argument. It agreed that the obstruction of Congress's certification of the Electoral College vote satisfied the "administration of justice" component of U.S.S.G. § 2J1.1(b)(1)(B); however, it determined that Mr. Brock's conduct did not satisfy the violence component because he did not engage in causing or threatening to cause physical injury to a person or property damage—indeed, the evidence showed the opposite: he engaged in "no violence" and "actually avoided or helped to try to avoid violent confrontations." *See* Sent'g Transcript, ECF No. 112 at 12, 27-30, 73; *see also* PSR ¶ 52 ("Mr. Brock did not engage in violent acts while inside the Capitol, and in fact stopped violence from occurring inside the Capitol"); PSR ¶ 31 (noting Sgt. Nairobi Timberlake "testified that Mr. Brock attempted to calm the rioters and get them to stop fighting with the USCP officers."); PSR ¶ 32 (noting Mr. Brock "told other rioters to get out of Vice President Pence's chair and to be respectful"); Trial Transcript, ECF

2

No. 81 at 406 (Court: "the evidence shows that [Mr. Brock] tried to calm the protesters").

On March 20, 2023, this Court sentenced Mr. Brock to 24 months' imprisonment—amounting to a low-end guideline sentence. *See* Judgment, ECF No. 59. The Court opined that several factors warranted a downward variance "from the bottom of the guideline range," including (1) Mr. Brock's "military service," (2) "the fact there was no violence that he engaged in and he actually avoided or helped to try to avoid violent confrontations," and (3) the "fact that Mr. Brock does have some responsibilities with his family, in terms of the care of his parents." ECF No. 112 at 72-73. Despite these positive factors, the Court ultimately determined that a low-end guideline sentence was appropriate because of several countervailing factors, including (1) Mr. Brock's incendiary rhetoric leading up to January 6th, (2) "the fact that he brought and then wore to the Capitol on January 6th a helmet and a tactical vest," and (3) the fact that "we have no acceptance of responsibility and no showing of remorse whatsoever, zero." *Id.* at 73. "All of that" led the Court to conclude that "there should not be a variance down from the guideline" and instead a low-end guideline sentence would be appropriate. *See id.* With a recommended guideline range of 24 to 30 months, the Court imposed the low-end guideline sentence of 24 months.[1] *See id.*

On March 28, 2023, Mr. Brock appealed his conviction and sentence, *see* ECF No. 100, which presently remains pending with the D.C. Circuit. *See* No. 23-3045. He is projected to

---

[1] Specifically, the Court imposed 24 months on Count 1; 12 months concurrent on Counts 2 and 3; and 6 months concurrent on Counts 4, 5, and 6. *See* Sent'g Transcript, ECF No. 112 at 73; *see also* Judgment, ECF No. 98 at 3.

complete his prison sentence on December 3, 2024.[2]

## Discussion

At the outset, Mr. Brock explains that this Court may entertain this motion while his case is on appeal in the D.C. Circuit. Federal Rule of Appellate Procedure 4(b)(3) deprives a district court of jurisdiction once an appeal has been filed and therefore a district court cannot grant a motion without a remand. However, Federal Rule of Criminal Procedure 37 addresses this very situation and allows a district court to consider the motion and either "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37; *see also United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984). Mr. Brock therefore requests that this Court give an "indicative ruling" that it would grant the motion should the D.C. Circuit remand for that purpose, so that Mr. Brock may request that the D.C. Circuit issue a limited remand of the case under Federal Rule of Appellate Procedure 12.1(b).

An indicative ruling is appropriate in this case. After Mr. Brock's sentencing, effective November 1, 2023, the Sentencing Commission retroactively amended the sentencing guidelines to reduce the total offense level by two points for defendants without any criminal history points, so long as they meet the following criteria:

1. the defendant did not receive any criminal history points from Chapter Four, Part A;
2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
3. the defendant did not use violence or credible threats of violence in connection with the offense;
4. the offense did not result in death or serious bodily injury;

---

[2] *See* Bureau of Prisons, *Inmate locator*, available at https://www.bop.gov/inmateloc/ (reporting an individual's projected release date).

5. the instant offense of conviction is not a sex offense;
6. the defendant did not personally cause substantial financial hardship;
7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

U.S.S.G. § 4C1.1(a). This amendment is commonly referred to as Amendment 821, part B.

Mr. Brock meets all the above criteria. Counsel anticipates the government will disagree, arguing (as it has done in other January 6 cases) that Mr. Brock is ineligible for a sentence reduction because, even if he did not personally use violence, he was part of a mob that "use[d] violence or threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3). Such a contention is meritless. Courts in this district that have addressed this issue have uniformly rejected the government's claim that violence of the mob disqualifies individuals who did not personally engage in violence themselves. To give a few examples:

| *United States v. Hernandez*, No. 21-cr-445, ECF No. 65 at 6 (D.D.C. Jan. 31, 2024) (Collar-Kotelly, J.) | Applying § 4C1.1 zero-point offender adjustment to Jan. 6 offender and noting "it is clear that the insurrection as a whole was certainly violent, but it is not the violence of others or general crowd violence that is the focus of this Court's inquiry[.]" |
|---|---|
| *United States v. Bauer*, No. 21-cr-386-2, ECF No. 195 at 8 (D.D.C. Jan. 29, 2024) (McFadden, J.) | "The Court thus declines to adopt the Government's broad guilt-by-association interpretation of § 4C1.1." |

5

| | |
|---|---|
| *United States v. Isaacs*, No. 22-cr-338 (D.D.C. Jan. 12, 2024) (Friedrich, J.)[3] | Applying the § 4C1.1 zero-point offender adjustment after finding that the exclusionary criteria requiring that a "defendant not use violence or credible threats of violence in connection with the offense" requires more than mere presence in the crowd. |
| *United States v. Parks*, No. 21-cr-411 (D.D.C. Nov. 15, 2023) (Mehta, J.)[4] | Applying § 4C1.1 zero-point offender adjustment to defendant who government alleged was close to rioters who overran a group of officers. According to the Court, "notwithstanding what was conduct that clearly contributed to the chaos and the mayhem of the day and did so in a significant way, I just don't think any of the disqualifying factors here are applicable to his offense or to the related conduct[.]" Sent'g Tr. (Nov. 15, 2023) at 38-39. |
| *United States v. Weyer*, No. 22-cr-40 (D.D.C. Sept. 14, 2023) (Boasberg, J.) | Prospectively applying the § 4C1.1 zero-point offender adjustment to January 6 defendant who Judge Boasberg characterized as "actively encouraging" others to break through the barriers and go through the doors of the Capitol and "rallying the troops to commit illegal acts." Sent'g Tr. (Sept. 14, 2023) at 20-22. |
| *United States v. Eicher*, No. 22-cr-38 (D.D.C. Sept. 15, 2023) (Howell, J.)[5] | Applying § 4C1.1 zero-point offender adjustment (via variance) and rejecting the government's argument that the January 6 defendant was disqualified under the violence |

---

[3] Undersigned counsel was not present at the sentencing hearing and does not have access to the transcript in *Isaacs* but learned this information from the government's opposition in *United States v. Hernandez*, No. 21-cr-445, ECF No. 63 at 14 n.4.

[4] Undersigned counsel can distribute the sentencing transcripts from *Parks* and *Weyer* upon request.

[5] Undersigned counsel was not present at the sentencing hearing and does not have access to the transcript in *Eicher* but learned this information from defense attorneys and the docket. *See, e.g.*, Min. Order in *Eicher*, No. 22-cr-38-BAH (Aug. 31, 2023) (ordering parties to submit their position as to whether "she would be eligible for a 2-point reduction to her base level as sentencing" under U.S.S.G. § 4C1.1(a)).

|  | factor because of the mob violence. |
|---|---|
| *United States v. Sheppard*, No. 23-cr-203, 2024 WL 127016, at *4 (D.D.C. Jan. 11, 2024) (Bates, J.) | Finding that one "of the first rioters to enter the Capitol" who "joined others in overrunning police lines" and who "looked on as other rioters violently punished out the windows of doors mere inches from officers' heads" would likely qualify for the two-level reduction under 4C1.1. |

It is simply not enough that Mr. Brock was part of a crowd where *others* engaged in violence or yelled at officers.  Rather, the plain text and structure of § 4C1.1 makes clear that the defendant must *personally* use violence or make credible threats of violence to be disqualified under § 4C1.1(a)(3). Specifically, U.S.S.G. § 4C1.1(a)(3) requires that "*the defendant* did not *use* violence or credible threats of violence in connection with the offense." *Id.* (emphasis added). By contrast, the immediately succeeding subsection in § 4C1.1(a)(4) requires that "*the offense* did not *result* in death or serious bodily injury." *Id.* (emphasis added).  The contrast in these provisions' subjects (*i.e.*, "defendant" versus "offense") and operative verbs ("use" versus "result" or "involves") makes clear that § 4C1.1(a)(3)'s criteria is defendant-specific; it requires the defendant himself, and not others in the crowd, to "*use* violence or credible threats of violence in connection with the offense." *Cf. United States v. Hernandez-Barajas*, 71 F.4th 1104, 1106-07 (8th Cir. 2023) (cleaned up) (interpreting similarly-worded threats provision in U.S.S.G. § 2D1.1(b)(2) and concluding that the "sentence's subject, the doer of the action, is the defendant" and that "[g]rammatically speaking, the defendant is the one who must make the credible threat, even if it involves the potential use of violence by someone else"); *see also* U.S.S.G. § 2J1.2(b)(1)(B) (applying an eight-point enhancement "[i]f *the offense involved* causing or threatening to cause physical injury to a person…").

The Sentencing Guidelines do not define the term "use violence or credible threats of violence" within § 4C1.1 or its commentary. When no definitions are provided, courts can look to dictionary definitions to determine meaning. *See Kaufman v. Nielsen,* 896 F.3d 475, 485-87 (D.C. Cir. 2018). Both Judge McFadden and Judge Collar-Kotelly looked to dictionary definitions of "violence" when considering the application of § 4C1.1(a)(3) and determined that it requires "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or the "exertion of any physical force so as to injure or abuse." *Bauer*, 21-cr-386 (TNM), ECF No. 195 at 4-5 (quoting Black's Law Dictionary 11th ed. 2019 and Webster's Third New International Dictionary (1993)); *see also Hernandez*, No. 21-cr-445 (CKK), ECF No. 65 at 5 (same).

Other courts interpreting the term "violence" where it appears in other parts of the Sentencing Guidelines have similarly found that to qualify as "using violence," one must "use[] physical force with the intent to injure[.]" *United States v. Pineda-Duarte*, 933 F.3d 519, 523 (6th Cir. 2019) (interpreting U.S.S.G. § 2D1.1(b)(2)'s identically-worded "used violence" provision in the absence of a Guidelines definition and relying on Black's Law Dictionary and Webster's Dictionary). And "credible threats of violence" require one to credibly "express an intention to inflict pain, harm, or punishment" through violence. *See Hernandez-Barajas*, 71 F.4th at 1107 (cleaned up) (interpreting U.S.S.G. § 2D1.1(b)(2) and quoting definition of "threats" from *American Heritage Dictionary of the English Language* 1813 (5th ed. 2016)). Even pushing of an officer—which Mr. Brock did not do—is not sufficient to satisfy these definitions where the defendant lacks the requisite intent to injure. *See United States v. Jaimes-Molina*, No. 17-cr-69, 2019 WL 4254459, at *5 (N.D. Ind. Sept. 9, 2019) (finding that even though defendant shoved

8

officer, defendant lacked the intent for the act to qualify as a credible threat to use violence).

Given the above principles, Mr. Brock is eligible for a sentence reduction under U.S.S.G. § 4C1.1. He did not personally use or credibly threaten violence and had no intent to injure others. The Court already recognized that he engaged in "no violent conduct, [and] no property damage." Sent'g Transcript, ECF No. 112 at 72. Rather than engage in violence, the Court found "he tried, on more than one occasion, actually, to calm other rioters in order to avoid violent activity and conduct with law enforcement officers; and that is to his credit." *Id.*; *see also* PSR ¶ 52 (recognizing Mr. Brock "stopped violence from occurring inside the Capitol"); PSR ¶ 31 (highlighting Sgt. Nairobi Timberlake's testimony "that Mr. Brock attempted to calm the rioters and get them to stop fighting with the USCP officers"); PSR ¶ 32 (noting Mr. Brock "told other rioters to get out of Vice President Pence's chair and to be respectful"); Trial Transcript, ECF No. 81 at 406 (Court: "the evidence shows that [Mr. Brock] tried to calm the protesters").

Because Mr. Brock is eligible under the criteria at § 4C1.1, this Court may reduce his sentence. Section 3582(c)(2) authorizes the Court to reduce a prison sentence imposed "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Commission." *Id.*; *see also* U.S.S.G. § 1B1.10(a)(1). The Commission's applicable policy statements create two relevant limitations to granting a sentence reduction: (1) any reduction cannot go below "the minimum of the amended guideline range," and (2) in "no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(A).

As shown below, Mr. Brock's original sentencing range (shown below on the left) has

9

been subsequently lowered by the Sentencing Commission (shown below on the right):

|  | **Original Sentence** | **Application of Amendment 821 (Part B)** |
|---|---|---|
| Total offense level: | 17 | 15 |
| Criminal history points: | 0 | 0 |
| Criminal history category: | I | I |
| Guideline range: | 24-30 months | 18-24 months |
| Sentence: | 24 months | 18 months (proposed) |
| Projected release date: | December 3, 2024 | June 3, 2024 (proposed) |

In other words, if Part B of Amendment 821 had been in force when Mr. Brock was sentenced, his guideline range would have been 18-24 months instead of 24-30 months. He is thus eligible for a sentence reduction under § 3582(c)(2).

Mr. Brock is worthy of a sentence reduction as well. At the time of his sentencing, this Court considered all the factors under 18 U.S.S.C. § 3553(a) and concluded that a low-end sentence was appropriate—indeed, it grappled with whether a downward variance below the minimum range would be appropriate. Since his sentencing, Mr. Brock has engaged in mostly positive post-sentence rehabilitation. In the roughly eight months he has been incarcerated, he has worked in various capacities, including in the food service department and education department. *See* Ex. 1 (BOP Records) at 3. While the classes available to Mr. Brock as a college-educated inmate are limited, he has spent his time tutoring other inmates to help them pass the GED—he is "five for five" according to Mr. Brock, meaning he has successfully helped five inmates pass the GED. Mr. Brock has only one disciplinary infraction for engaging in disruptive conduct, for which he has already been punished by losing 27 days of good time credit. *See id.* at 5; *see cf. United States v. Greene*, 561 F. Supp. 3d 1, 16 (D.D.C. 2021) ("It is not unusual for inmates to receive reprimands in the prison context."). Demonstrating his desire to make amends, Mr. Brock has fully paid his restitution while incarcerated. *See* Ex. 1 at 7 (showing

10

financial responsibility program status "Completed"). Given his mostly positive conduct, the Bureau of Prisons considers Mr. Brock to be a "minimum recidivism risk." *Id.* at 2.

Simply put, the only § 3553(a) factors that have changed since this Court sentenced Mr. Brock to a low-end guideline sentence are his now-applicable guideline range (which obviously supports a sentence reduction) and his post-sentence conduct (which also supports a sentence reduction). He is thus deserving of a sentence reduction. Accordingly, Mr. Brock requests that the Court convert the low-end guidelines' sentence he received under the old guidelines (24 months with a range of 24-30 months) to a low-end guideline sentence under the now-applicable guidelines (18 months with a range of 18-24 months), amounting to a six-month reduction.

## Conclusion

For the above reasons, Mr. Brock respectfully requests that this Court issue an indicative ruling that it would grant his motion for a sentence reduction and reduce his sentence to 18 months should the D.C. Circuit issue a remand for that limited purpose.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004

11

## Certificate of Service

      I certify that on February 7, 2024, a copy of Defendant's Motion for an Indicative Ruling on a Sentence Reduction was served via electronic mail upon:

Jennifer Blackwell
Deputy Chief of the Criminal Division
United States Attorney's Office
Jennifer.Blackwell3@usdoj.gov

                                                  _____/s/_____
                                                Benjamin Flick
                                                Research & Writing Attorney
                                                Federal Public Defender's Office
                                                625 Indiana Ave, NW, Suite 550
                                                Washington, D.C. 20004