UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>    v.<br><br>**LARRY BROCK,**<br><br>    Defendant. | **Case No. 21-CR-140 (JDB)** |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
### FOR SENTENCING ADJUSTMENT

The United States, by and through its attorney, the United States Attorney for the District of Colombia, respectfully submits this response to the defendant's motion for a sentence reduction based on the newly enacted U.S.S.G. § 4C1.1. ECF No. 113. While the government concedes that Section 4C1.1 applies here, the Court lacks jurisdiction to issue an order reducing the defendant's sentence while an appeal is pending, and the Court should not exercise its discretion to reduce Brock's sentence under the 3553(a) factors.

  I.   **FACTUAL BACKGROUND**

Larry Brock, a retired Lieutenant Colonel in the United States Air Force, participated in the January 6 attack on the Capitol. His crimes are documented through a series of videos including body worn cameras from the Metropolitan Police Department, open-source video, and surveillance footage from inside of the Capitol, as well as numerous incendiary and violent statements on Facebook in the days and weeks leading up to January 6.

Brock entered the Capitol on January 6 through the broken Senate Wing Doors approximately 12 minutes after the doors were initially breached by rioters. Brock was wearing a tactical vest and helmet when he entered the Capitol, and eventually picked up a pair of flex cuffs off the ground which he then carried onto the Senate Gallery and onto the Senate Floor. Outside

1

the Senate Gallery, Brock observed violence by other rioters, and attempted to mediate the situation. Brock initially tried to open the doors to the Senate Floor with a set of keys, before making his way onto the Senate Floor through a door opened by another rioter. Once on the Senate Floor Brock shouted, "THIS IS OUR HOUSE" and "This is an IO War. We can't lose the IO War." Brock eventually exited the Capitol building after spending approximately 38 minutes inside.

Some of the incendiary and violent statements that Brock made in the lead up to, and on January 6 were:

> November 11, 2020: "The battle isn't winnable democratically if they complete the steal. They went into court yesterday. Let's see what happens."

> "Fire and blood will be needed soon."

> December 24, 2020: "I bought myself body armor and a helmet for the civil war that is coming."

> December 31, 2020: "We are now under occupation by a hostile governing force. That may seem ludicrous to some, but I see no distinction between a group of Americans seizing power and governing with complete disregard to the Constitution and an invading force of Chinese communists accomplishing the same objective. Against all enemies foreign and domestic"
> #OathKeeper #2A #111%

> "Definitely not skipping these today. Luck may be needed in the Second Civil War"

> January 1, 2021: "I suspect that is what will happen on the 6th. The castle will be stormed. The question is what then?"

> January 5, 2021: "This is not a President that sounds like he is giving up the White House."

> "I truly believe that if we let them complete the steal we will never have a free election again."

> "I really believe we are going to take back what they did on November 3"

> "Plane is packed with people going to stop the steal"

> "Not interested in missing tomorrow"

"The watch phrase here seems to be Restore Our Republic"

January 6, 2021: "Patriots on the Capitol"

"Patriots storming"

"Facebook deleted a post. Trying to find the name of a woman that was gunned down by Capitol police today. She was unarmed and is the first Patriot Martyr in the Second American Revolution"

"Funny BLM Is a movement but Patriots are a mob. The real issue is the ruling class got a quick reminder that they are not untouchable." (PSR ¶ 24).

On June 23, 2021, a grand jury in the District of Columbia returned a six count Superseding Indictment against Brock. (ECF No. 24). Count One charged Brock with Obstruction of an Official Proceeding in violation of 18 U.S.C. §§ 1512(c)(2) and 2; Count Two charged Brock with Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1); Count Three charged Brock with Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2); Count Four charged Brock with Entering and Remaining on the Floor of Congress in violation of 18 U.S.C. § 5104(e)(2)(A); Count Five charged Brock with Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D); and Count Six charged Brock with Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). On November 16, 2022, Brock was found guilty of all six counts of the Superseding Indictment after a bench trial. (ECF No. 98). On March 17, 2023, Brock was sentenced to 24 months on Count One, 12 months each on Counts Two and Three, and 6 months each on Counts Four, Five, and Six. (ECF No. 98). All terms were to run concurrent with one another. (ECF No. 98)

## II.      RETROACTIVE APPLICATION OF U.S.S.G. § 4C1.1

U.S.S.G. § 4C1.1 provides for a two-level reduction for offenders with no criminal history points who are not subject to any of ten exclusionary criteria, including:

3

- § 4C1.1(2): the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
- § 4C1.1(3): the defendant did not use violence or credible threats of violence in connection with the offense;
- § 4C1.1(4): the offense did not result in death or serious bodily injury;
- § 4C1.1(7): the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense.

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added). Additionally, any proceeding under Section 3582(c)(2) is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible under § 4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing;

and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead, § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction" U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii); *see also id.* Background ("The authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See*, *e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section 1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." That means the court may, but is not required, to consider the defendant's post-sentencing rehabilitation, if any. *See United States v. Rodriguez-Rosado*, 909 F.3d 472, 481 (1st Cir. 2018); *United States v. Banderas*, 858 F.3d 1147, 1150 (8th Cir. 2017).Such conduct would include social media posts and other statements relating to the Capitol riot on January 6, 2021.

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A). Thus, the court may not reduce the sentence below the range

provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

Here, the government concedes that Section 4C1.1 is applicable to the defendant; Brock has no criminal history points and his conduct did not fall into any of the exclusionary criteria. However, the Court should not grant the defendant's motion because (1) it lacks jurisdiction to do so while an appeal is pending and (2) even if it had jurisdiction, it should not reduce Brock's sentence in light of the 3553(a) factors.

### III. THE COURT LACKS JURISDICTION TO ISSUE AN ORDER REDUCING THE DEFENDANT'S SENTENCE WHILE AN APPEAL IS PENDING

"The filing of a notice of appeal is an event of jurisdictional significance" because "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, (1982). "The district court does not [then] regain jurisdiction over those issues until the court of appeals issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997). While there are exceptions to this jurisdictional rule, "[a] motion to modify a prison term pursuant to section 3582(c) is not one of the two established exceptions to the divestiture of a district court's jurisdiction over a matter pending appeal." *United States v. Johnson*, 464 F. Supp. 3d 22, 34 n. 7 (D.D.C. 2020).

While a motion for relief under 18 U.S.C. § 3582(c) may not be granted by a district court while an appeal is pending, pursuant to Fed. R. Crim. P. 37(a), "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." That is, while a court may review the merits of a defendant's timely motion under 18 U.S.C. § 3582(c), it cannot order a reduction in a defendant's sentence while an appeal is pending. *See, e.g.*, United

6

*States v. Jackson*, 468 F. Supp. 3d 59, 65 (D.D.C. 2020), aff'd, 26 F.4th 994 (D.C. Cir. 2022) (reviewing and denying defendant's motion for relief under 18 U.S.C. § 3582(c)(1)(A) while an appeal was pending).

Brock filed an appeal in this case on March 31, 2023. ECF No. 100. On September 27, 2023 oral arguments were held in front of the D.C. Circuit. *See* No. 23-3045. Brock's appeal is still pending with the D.C. Circuit. *Id.* Thus while the court may take one of the three steps outlined in Rule 37(a), it cannot order a reduction in Brock's sentence until his appeal is resolved.

## IV. WHILE SECTION 4C1.1 MAY APPLY TO BROCK, NO SENTENCING REDUCTION IS WARRANTED UNDER THE 3553(a) FACTORS

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges. *See, e.g.*, *United States v. Strand*, 21-cr-085 (CRC), ECF No. 150 at 7-8; *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013).

While the government concedes that Section 4C1.1 would apply to Brock, the Section 3553(a) factors counsel against granting a sentence reduction. To start, Brock engaged in violent and incendiary rhetoric in the days and months that led up to January 6. In November 2020, Brock posted on Facebook "When we get to the bottom of this conspiracy we need to execute the traitors…." In December 2020, Brock posted to Facebook using the hashtag "#civilwar 2021" and sent a separate Facebook message to a friend listing a set of military tasks for January 6 that included "Seiz[ing] all Democratic politicians and Biden key staff and select Republicans (Thune and McConnell). Begin interrogations using measures we used on Al Queda…." The message also

7

listed "ROE", or rules of engagement, including "Do not kill LEO [law enforcement officers] unless necessary" (emphasis added), and "Attempt to capture Democrats with knowledge of the coup."

On January 6 itself, Brock entered the Capitol through broken doors, amidst broken glass, while wearing a tactical vest and helmet. Inside, Brock picked up and carried around a pair of flex cuffs, contrary to his later claim to the media that he was just trying to give the flex cuffs back to a law enforcement officer. Brock then made his way to the Senate floor—one of the most secure areas inside of the Capitol building—only minutes after Vice President Pence had been ushered out of the Senate. At first, Brock attempted to open a door to the Senate chamber with a set of keys, and when that did not work, he found a new way in and entered through a different door which had been opened by another rioter. Once on the Senate floor, Brock yelled at fellow rioters "THIS IS OUR HOUSE," actively encouraging them. Brock, a retired Air Force officer, took all of these actions despite his oath to support and defend the Constitution.

Brock's misconduct continued during his period of incarceration for his crimes. On July 21, 2023, Brock was sanctioned for disruptive conduct (high) while in the Bureau of Prisons. *See* Govt. Ex. 1 (attached). As a result of this incident, Brock lost commissary time, visitation time, and email time.

The 3553(a) sentencing factors also counsel against a sentence reduction because Brock's current sentence of 24 months falls within his adjusted guidelines range even after the two-point reduction under Section 4C1.1 is applied. Specifically, at sentencing, the Court calculated Brock's offense level as 17, which with a criminal history level of I, places his guidelines range at 24-30 months. ECF No. 85. Reducing the defendant's offense level by 2 points, his adjusted guidelines range is 18-24 months. While that places Brock's 24-month sentence at the high end of his adjusted

guidelines range, that does not make the sentence inappropriate. The Court already determined that a 24-month sentence was proper to achieve the purposes outlined in 3553(a), and Brock's conduct has not changed since his sentence was imposed, with the addition that he has since behaved poorly while in custody. Therefore, the Court should not reduce Brock's sentence further. *See United States v. Bauer,* No. 21-cr-386-2 (TNM), ECF No. 195 at 10 ("The Court found previously that a sentence of 27 months' imprisonment and 24 months' supervised release is necessary to achieve the purposes outlined in 18 U.S.C. § 3553(a). Nothing Bauer argues here changes that conclusion.").

The 3553(a) factors counsel against a sentence reduction for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Finally, the government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF

FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications criminal activity have gone mainstream.").

Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that the Court should deny a sentence reduction. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.[1]

---

[1] If the Court does decide in its discretion to grant the defendant's motion, the government requests that the Court delay release by 10 days in order to allow time for the Bureau of Prisons to process the release, as recommended by the Committee on Criminal Law of the Judicial Conference of the United States in its January 25, 2024 memorandum.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ *April H. Ayers-Perez*
       April H. Ayers-Perez
       DOJ Trial Attorney
       TX Bar No. 24090975
       450 5th St NW, Suite 11412
       Washington, D.C. 20530
       (202) 894-4237
       April.AyersPerez@usdoj.gov

## **CERTIFICATE OF SERVICE**

On this 21st day of February, 2024, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

    /s/ *April H. Ayers-Perez*
DOJ Trial Attorney
TX Bar No. 24090975