United States District Court
For The District of Columbia

| | |
|---|---|
| **United States of America,** | |
| v. | Case No. 21-cr-140 (JDB) |
| **Larry Rendall Brock,** | |
| Defendant. | |

**Reply in Support of Motion for a Sentence Reduction**

A few significant issues are undisputed. First, the government concedes that Mr. Brock meets all the criteria set forth in U.S.S.G. § 4C1.1 and is thus eligible for a sentence reduction under the retroactive application of Part B of Amendment 821. *See* Gov't Opp'n, ECF No. 114 at 6. Second, the government agrees that if Part B of Amendment 821 had been in force when Mr. Brock was sentenced, his guideline range would have been 18-24 months instead of 24-30 months. *See id.* at 8. Third, the government agrees that the Court is authorized to issue an indicative ruling under Federal Rule of Criminal Procedure 37, stating that it would grant the motion should the D.C. Circuit remand for that purpose under Federal Rule of Appellate Procedure 12.1(b). *See id.* at 6.

Despite these significant concessions, the government appears to maintain its categorical policy that *no* January 6 defendant (including Mr. Brock) should receive the benefits of Amendment 821.[1] Whereas before, the government claimed that no January 6 defendant was

---

[1] To put the government's categorical policy in perspective, the government opposed a motion for a sentence reduction for a zero-point January 6 offender where only a ***3-day reduction*** was in dispute. Judge Kollar-Kotelly ultimately granted the sentence reduction, demonstrating the unreasonableness of the government's position. *See* No. 21-cr-445 (CKK), ECF No. 65 at 9

1

*eligible* for relief under U.S.S.G. § 4C1.1.  *See, e.g.*, *United States v. Yang*, No. 21-cr-100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024) (rejecting the government's violence-by-presence theory of § 4C1.1(a)(3) that would presumably apply to every January 6 case).  After consistently losing that argument in this district, *see id.* at *5 (listing cases), it has now changed its tact to argue that no January 6 defendant is *deserving* of relief under 18 U.S.S.C. § 3553(a).  Indeed, the government appears to have taken the very same arguments it lost under the violence exception in U.S.S.G. 4C1.1(a)(3) and simply repurposed them as § 3553(a) arguments.  *Compare Yang*, 2024 WL 419962, at *4 (rejecting government's argument that "§ 4C1.1 should not apply here—and presumably not in any January 6 case—because '[e]very rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to' the manifold harms of that day."), *with* Gov't Opp'n at 9 (arguing that § 3553(a) factors counsel against a sentence reduction because "[e]very rioter, whether or not they personally engaged in violence or personally threatened violence, contributed" to the manifold harms of that day).

More than anything else, the government's opposition is yet another attempt to supplant the Commission's reasoned judgment and make Amendment 821 neither applicable nor fully retroactive to a select group of people (January 6 defendants).  But the time to make a policy argument against this retroactive amendment has passed and Mr. Brock fits plainly fits within the limited class of zero-point offenders that the Commission determined should receive the retroactive benefit of Amendment 821.

---

(D.D.C. Jan. 31, 2024) ("[T]he government has not proffered any convincing reason why the Court should not reduce Defendant's sentence, especially in this case when the only benefit Mr. Hernandez will receive is de minimis—a release from incarceration on February 1, 2024 as opposed to February 4, 2024).

2

Aside from its generalized opposition to all January 6 offenders, the government makes only a half-hearted attempt to oppose Mr. Brock's individualized request for a sentence reduction. It first claims that 3553(a) factors counsel against granting a sentence reduction" because "Mr. Brock's "violent and incendiary rhetoric in the days and months that led up to January 6" and Mr. Brock's conduct on January 6, including his wearing of "a tactical vest and helmet." *See* Gov't Opp'n at 7-9. This argument is unpersuasive because, as mentioned in the opening brief, the Court already considered these facts when imposing its original sentence. *See* ECF No. 113 at 3, 10. Indeed, given that Mr. Brock did not engage in violence and "actually avoided or helped to try to avoid violent confrontations," the Court explicitly relied upon these countervailing facts as the basis for not varying "downward from the bottom of the guideline range." *See* Sent'g Transcript, ECF No. 112 at 83.

When focusing on the only § 3553(a) factors that have changed—*i.e.*, Mr. Brock's post-sentencing conduct and the newly-amended guidelines—the government offers no persuasive reason for why Mr. Brock should not receive a sentence reduction. For example, the government ignores all of Mr. Brock's positive post-sentence rehabilitation while in prison—including his work history; tutoring of several inmates that went on to successfully obtain their GED; and paying off all his restitution obligations while incarcerated—and claims that his single disciplinary infraction for disruptive conduct justifies denying his request for a sentence reduction amounting to six months. *See* Gov't Opp'n at 8. Not so. There are no allegations that this infraction involved violence, weapons, drugs, or any of the types of behavior that suggest he would pose a danger to the community if released earlier—in fact, given his otherwise perfect and positive conduct, the Bureau of Prisons considers him to be a "minimum recidivism risk." ECF No. 113-

3

1 at 2. More so, Mr. Brock has already been punished by the Bureau of Prisons for his behavior, *see id.* at 5, meaning additional punishment (here, amounting to 6 months incarceration) would be wholly disproportionate to the underlying conduct.

Turning to the change to the guidelines, the government takes the paradoxical view that they also "counsel against a sentence reduction because Brock's current sentence of 24 months falls within his adjusted guidelines range even after the two-point reduction under Section 4C1.1 is applied." Gov't Opp'n at 8. This makes no sense. By reducing the ranges for zero-point offenders, the Commission has undermined the premise of the Court's original sentence, transforming a low-end guideline sentence (24 months with a range of 24-30 months) to a high-end guideline sentence (24 months with a range of 18-24 months). The government attempts to minimize the importance of the guidelines in this case, *see* Gov't Opp'n at 9, ignoring not only the considerable "anchoring effect" of the guidelines,[2] but also this Court's underlying basis for

---

[2] "Practically speaking, applicable Sentencing Guidelines provide a starting point or 'anchor' for judges and are likely to influence the sentences judges impose." *See United States v. Turner*, 548 F.3d 1094, 1099 (D.C. Cir. 2008). The "gravitational pull of the Guidelines appears to be so strong that the change from mandatory to advisory Guidelines has had little to no impact on the average length of federal sentences." Hon. Mark W. Bennett, *Confronting Cognitive 'Anchoring Effect' And 'Blind Spot' Biases In Federal Sentencing: A Modest Solution For Reforming A Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 533-34 (2014) (citing U.S. Sent'g Comm. data); *United States v. Ingram*, 721 F.3d 35, 40 (2d Cir. 2013) (Calabresi, J., concurring) (discussing how "anchoring effects" influence judgments and noting that the court "cannot be confident that judges who begin" at a higher guidelines range "would end up reaching the same 'appropriate' sentence they would have reached" if they started from a lower guidelines range). The most troubling fact about cognitive anchoring is not that it exists on a subconscious level; rather, it is that people routinely deny that anchoring impacted their judgments when, in fact, "substantial anchoring effects were found." *See, e.g.*, Bennett, 104 J. Crim. L. & Criminology at 499 and 529 (discussing studies from Timothy D. Wilson et al., *A New Look at Anchoring Effects: Basic Anchoring and Its Antecedents*, 125 J. Experimental Psychol. 387 (1996)). Hence, "even if judges [or prosecutors] become aware of how the guidelines cognitively anchor their sentencing practices, they are likely to deny its existence in specific cases." *Id.* at 529.

imposing Mr. Brock's sentence. At sentencing, this Court grappled with whether to (i) "vary downward from the bottom of the guideline range" or (ii) impose a sentence at the bottom of the guideline range. *See* ECF No. 112 at 73. It ultimately concluded that a sentence at the bottom of the range was appropriate (24 months with a range of 24-30 months). *See id.* At no point did the Court suggest that a high-end guideline sentence would be appropriate. *See id.* Hence, the § 3553(a) factors strongly support a sentence reduction given that Mr. Brock merely seeks to convert the low-end guideline sentence he received under the old guidelines (24 months with a range of 24-30 months) to a low-end guideline sentence under the new guidelines (18 months with a range of 18-24 months).

Finally, the government suggests that January 6 defendants are somehow outside the universe of cases captured by Part B of Amendment 821 because it was "based on recidivism data for offenders released in 2010" and "there is no reason to believe this historical data is predicative of recidivism for defendants who engage in acts of political extremism on January 6." Gov't Opp'n at 9-10. As this Court has already found, however, "[t]his argument fails for multiple reasons." *See Yang*, 2024 WL 519962, at *5. *First*, "speculation about the underlying analysis behind a Guidelines amendment is not a valid basis to disregard the Guidelines as enacted." *Id. Second*, "the Sentencing Commission (and Congress) had almost three years after January 6 to craft a carveout excluding January 6 defendants from § 4C1.1's potential benefit but did not do so." *Id.* It is disingenuous to suggest that the Commission somehow overlooked January 6 defendants given that the events of January 6 have dominated the news for the past three years and the Sentencing Commission is headquartered in Washington, D.C. *Third*, "there is no indication that § 4C1.1's animating rationale does not hold true in this context—*i.e.*, that

5

despite the unprecedented nature of January 6, rioters with zero criminal history points who meet the other criteria may still be less likely to recidivate than those with prior criminal records." *Id.* Part B was passed because recidivism data showed that *all* zero-point offenders differed meaningfully from those with countable criminal history. It did not matter their crime. If they had zero points, across the board, they were less likely to recidivate. *See* U.S.S.G. Supp. to App. C, Amendment 821, Reason for Amendment.[3] The government fails to identify what is so unique about January 6 defendants that they would skew otherwise universally true data.

In short, Mr. Brock indisputably fits within the limited class of zero-point offenders that the Commission determined should receive the retroactive benefit of Amendment 821. Aside from its general opposition to all January 6 defendants, the government offers no persuasive reason under the § 3553(a) factors for denying Mr. Brock's request for a sentence reduction.

## Conclusion

For the above reasons and those included in his opening motion, Mr. Brock respectfully requests that this Court issue an indicative ruling that it would grant his motion for a sentence reduction and reduce his sentence from 24 months to 18 months (likely modifying his projected release date from December 3, 2024, to June 3, 2024) should the D.C. Circuit issue a remand for that limited purpose.

---

[3] According to the Commission's Reasons for Part B of Amendment 821: "Recidivism data analyzed by the Commission shows that offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point. *See* U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010* (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Among other findings, the report concluded that zero-point offenders were less likely to be rearrested than one-point offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category." U.S.S.G. Supp. to App. C, Amendment 821, *Reason for Amendment*.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney
Federal Public Defender's Office
625 Indiana Ave, NW, Suite 550
Washington, D.C. 20004