UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-140-JDB |
| v. : | |
| : | |
| LARRY BROCK, : | |
| : | |
| Defendant. : | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR RELEASE PENDING APPEAL

The United States of America respectfully opposes Defendant Larry Brock's motion for release pending appeal (ECF 116). Brock participated in the Capitol riot on January 6, 2021, and was convicted after a bench trial of one felony and five misdemeanors. He was sentenced to a total of 24 months' imprisonment. Brock's motion for release should be denied because Brock cannot show (1) by clear and convincing evidence that he does not pose a danger to the community and is not a flight risk, or (2) overcome the high barrier for release pending appeal required by 18 U.S.C. § 3143(b). Although the D.C. Circuit resolved in his favor his challenge to the three-level sentencing enhancement for interfering with the "administration of justice," Brock cannot show that this will likely reduce his sentence to a term of imprisonment that will expire before his appeal is decided. Similarly, Brock cannot show that the pendency of *Fischer* before the Supreme Court entitles him to relief. *See United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), cert. granted, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023). Brock's motion should be denied.

## BACKGROUND

Larry Brock, a retired Lieutenant Colonel in the Air Force, stormed the United States Capitol building on January 6, dressed in tactical gear, and on a mission. In the days and weeks leading up to January 6, Brock grew increasingly angry about the 2020 Presidential Election. He

proclaimed on Facebook that the election was stolen, and that then President-Elect Joe Biden would not be inaugurated in January 2021. Brock posted on social media things such as, "If SCOTUS[1] doesn't act we have two choices. We can either live in a Communist Country or we can rebel, keep the rightful President in power and demand free and fair elections. #civilwar2021." 11/15/22 Tr. at 229-30; *see also* Trial Ex. 905. And Brock advocated for military-like plans to torture and kill perceived enemies after the election. 11/15/22 Tr. at 245-54. Further, he expressed an acute awareness of what was happening on January 6, stating, "Congress can stop it on the 6th of January," and "Biden won't be inaugurated. We will ensure that on the 6th." 11/15/22 Tr. at 254-55, 260-61; *see also* Trial Ex. 911, 915. Brock bragged to his friends about the tactical gear he was buying in anticipation of January 6, even saying he "preferred outright insurrection at this point." 11/15/22 Tr. at 255-56, *see also* Trial Ex. 912. In December 2020, Brock sent a list of objectives and rules of engagement on Facebook:

> Assumption: US Military isn't involved
>
> Objection: Restore the rule of law in the rebellious states, hold a free and fair election in 1 year
>
> Plan of Action if Congress fails to act on 6 January
>
> Main Tasks:
> 1. Seize all democratic politicians and Biden key staff and select Republicans (Thune and McConnell). Begin interrogations using measures we used on Al Queda to gain evidence on the coup
> 2. Have General Flynn get in touch with President Trump and have him declare a State of Insurrection exists to provide color of law to our actions

---

[1] FBI Agent Moore testified at trial that SCOTUS referred to the Supreme Court of the United States.

3. Seize national media assets and key personnel. Zuck[2], Jack[3], CNN[4] lead and talking heads, seize WAPO[5] and NYT[6] editors. Eliminate them. Media silence except for White House communications
4. Present slate for clean elections to existing congress and make sure they sign.
5. Let the Democratic cities burn. Cut off power and food to all who oppose us.
6. Establish provisional government in rebellious states and representatives we can count on.
7. Cease all foreign aid except for key allies as determined by Trump
8. General pardon for all crimes up to and including murder of those restoring the Constitution and putting down the Democratic Insurrection.

ROE[7]:

1. Do not kill LEO[8] unless necessary. Gas would assist in this if we can get it.
2. Attempt to capture Democrats with knowledge of coup
3. Shoot and destroy enemy communication nodes and key personnel
4. So many sub tasks I can't even imagine them

11/15/22 at 244-49, *see also* Trial Ex. 910.

On January 6, Brock, dressed in combat gear, entered the U.S. Capitol through a broken set of doors amongst a mob of rioters. 11/14/22 Tr. at 93, *see also* Trial Ex. 411. Making his way through the Capitol, Brock picked up a pair of discarded flex cuffs and kept them prominently displayed, with the exception of when he was in the presence of Capitol Police outside the Senate Gallery. 11/14/22 Tr. at 141, 166. After making his way onto the Senate Gallery, and armed with flex cuffs and a set of keys, Brock approached and attempted to unlock secured senate lobby doors

---

[2] Agent Moore testified at trial he believed Zuck to be Mark Zuckerberg, the CEO of Facebook. 11/15/22 at 247.

[3] Agent Moore testified at trial he believed Jack to be Jack Dorsey, then CEO of Twitter. *Id.*

[4] Agent Moore testified at trial he believed CNN to be the Cable News Network. *Id.* at 247-48

[5] Agent Moore testified at trial he believed WAPO to be the Washington Post. *Id.* at 247.

[6] Agent Moore testified at trial he believed NYT to be the New York Times. *Id.*

[7] Agent Moore testified at trial he believed ROE to be rules of engagement. *Id.* at 248.

[8] Agent Moore testified at trial he believed LEO to be law enforcement officers. *Id.*

that would give him direct access to the Senate Floor. 11/14/22 Tr. at 110. Brock eventually used another door and made his way into one of the most sensitive areas in all of Government—the Senate Floor that the Vice President, Senators, and staff had fearfully evacuated minutes earlier—and showcased his leadership skills. *See* Trial Ex. 612 at 00:14. While on the Senate Floor, Brock loudly proclaimed, "THIS IS OUR HOUSE!" and during a dispute with a fellow rioter sitting in the Vice President's chair, Brock lectured his fellow rioters that this was an "IO war."[9] Trial Ex. 509.

Brock was charged in a six-count Superseding Indictment with: violation of Title 18, United States Code, Sections 1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and Abetting) (Count One); Title 18 United States Code, Section 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds) (Count Two); Title 18, United States Code, Section 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) (Count Three); Title 40, United States Code, Section 5104(e)(2)(A) (Entering and Remaining on the Floor of Congress) (Count Four); Title 40, United States Code, Section 5104(e)(2)(D) (Disorderly and Disruptive Conduct in the Capitol Building) (Count Five); and Title 40, United States Code, Section 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Six). On November 16, 2022, Brock was convicted of all counts following a bench trial before the Court. November 16, 2022 Minute Entry. This Court's findings included that Brock "clearly intended to take very purposeful actions to interfere with any certification of the election,

---

[9] FBI Special Agent John Moore, a lieutenant colonel in the U.S. Army reserve component, explained that "Information operations is a broad term in concept referring to the use of information to shape the battlefield both using information to shape what enemy conventional military units do…". Tr. 11/15/22, 226: 25, 227:1-10.

4

and even to take actions that bordered on violent conduct and improper steps to impede the Congressional action of certification of the election." Tr. 11/16/2022, 399:19-23.

At sentencing, Brock failed to acknowledge his wrongdoing or express remorse for his conduct. Sent'g Tr. at 73. This Court also stated during Brock's sentencing hearing, "We have to take into account the rhetoric and intent through his plan of action, to his rules [of] engagement, and through other posts that is reflected in terms of his thinking and his mindset." Sent'g Tr. at 73. This Court further noted, "This kind of conduct that is contemplated and communicated in those detailed, repetitive posts; it's really pretty astounding coming from a former high ranking military officer. It's detailed. It's persistent. It's consistent. And it's both astounding and atrocious." *Id.*

Count One (obstruction of an official proceeding) drove the sentence because Count One produced the highest guidelines range.[10] U.S.S.G. § 3D1.2(a)-(c); Presentence Report ("PSR") ¶ 49. Relevant here, the Court held that the three-point enhancement under U.S.S.G. § 2J1.2(b)(2) applied to Brock's conduct. Thus, the Court calculated Count One's offense level as follows:

| Base Offense Level | U.S.S.G. § 2J1.2(a) | 14 |
|---|---|---|
| Special Offense Characteristic: Substantial Interference with the Administration of Justice | U.S.S.G. § 2J1.2(b)(2) | +3 |
| | | **Total: 17** |

Given a total offense level of 17 and criminal history category of I, Brock's Guidelines range was 24 to 30 months. Thus, the Court imposed a within-Guidelines sentence of 24 months'

---

[10] Counts One, Two, and Three grouped pursuant to U.S.S.G. § 3D1.2(b). *See also* PSR ¶ 49. The Sentencing Guidelines did not apply to Counts Four, Five, and Six because they are Class B or C misdemeanors. U.S.S.G. § 1B1.9; *see also* PSR ¶ 48.

incarceration on Count One, to run concurrently with a sentence of 12 months' incarceration on each of Counts Two and Three, and 6 months' incarceration on each of Counts Four, Five, and Six. ECF 98. The Court permitted Brock to remain on bond and allowed Brock to voluntarily surrender to the Bureau of Prisons for service of his sentence at a later date. *Id*.

On March 28, 2023, Brock filed a Motion for Release, ECF 101, which this Court denied, ECF No. 107.

On March 31, 2023, Brock filed an appeal in his case, challenging his conviction on 1512(c)(2) as well as the +3 sentencing enhancement for the "obstruction of the administration of justice." ECF No. 100. During the course of Brock's appeal, the D.C. Circuit twice denied his motions for release pending appeal. *See United States v. Brock*, No. 23-3045 (D.C. Cir. May 25, 2023, and December 5, 2023) (per curiam). On March 1, 2024, the D.C. Circuit issued its opinion affirming Brock's conviction under § 1512(c)(2), but vacating Brock's sentence and remanding for resentencing without application of the +3 sentencing enhancement under U.S.S.G. § 2J1.2(b)(2). *Id*. The D.C. Circuit then denied Brock's renewed motion for release pending appeal, without prejudice to its renewal before this Court. *Id*. The D.C. Circuit's mandate is currently stayed until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc. Thus far, no petition has been filed. If no petition is ultimately filed, the mandate will issue, and the matter will be remanded for resentencing consistent with *Brock*.

**ARGUMENT**

I.   **Applicable Legal Principles**

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the defendant meets a two-part test:

6

1. "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and

2. that the appeal "is not for the purpose of delay and raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B); *see also United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) ("[T]he provision requires a two-part inquiry: (1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal?").

If the Court finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). The defendant bears the burden to make the required showing under § 3143(b)(1). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

**II.    Brock Has Failed to Show that He Is Not a Flight Risk or Dangerous.**

First, Brock fails to show that he is not a flight risk or a danger to the community[11]. This is a required showing for release, regardless of the nature of any appeal. Here, Brock advocated for violence and the overthrow of the government, joined the mob on January 6 wearing a combat

---

[11] Although the government did not raise Brock being a flight risk or dangerous in its April 13, 2023 Opposition to Defendant's Motion for Release Pending Appeal (ECF 105), we now raise it recognizing Brock's conduct in BOP and the election year in conjunction with Brock's conduct and violent rhetoric in the lead up to and on January 6.

helmet and tactical vest, entered the Capitol Building through a broken door, picked up a pair of flex cuffs, and made his way onto the Senate Floor. Even being in the inner sanctum of our democracy did not give him pause; he shouted orders at his fellow rioters on the Senate Floor that "THIS IS OUR HOUSE" and this is an "IO war." Afterward, even at sentencing, Brock failed to acknowledge his wrongdoing or express remorse. Sent'g Tr. at 73. After reporting to the Bureau of Prisons ("BOP"), Brock engaged in disruptive conduct within his first two months, resulting in a loss of some good conduct time and a loss of privileges[12]. *See* Govt. Ex. 1 (attached).

Against these facts, Brock cannot show that he is not a danger to the community. Given his conduct on January 6, 2021, his violent rhetoric in the time leading up to January 6, and his conduct in BOP since beginning to serve his sentence of incarceration, Brock cannot show that now, as we are entering another hotly contested presidential election year, he would not encourage and engage in such conduct again. Nor can Brock show that he is not a flight risk. Neither the D.C. Circuit opinion in this case, nor *Fischer* guarantee Brock a reduced sentence. Even if this Court were inclined to release Brock pending appeal, he could still be facing several more months in prison. With this time of imprisonment remaining, and with knowledge of the reality of prison life, Brock may be more likely to flee.

In short, Brock has failed to meet his burden under 18 U.S.C. § 3143(b). He has not shown by clear and convincing evidence that he would not be a flight risk or danger to the community if released, notwithstanding his past actions to join the January 6 riot and storm the Senate floor, lack of remorse, and continued disruptive conduct in prison.

---

[12] The government has since received preliminary information suggesting serious misbehavior by Brock while at BOP.  We will continue to investigate these allegations and supplement this response as appropriate.

### III. Brock Has Not Shown Likelihood of a Reduced Sentence that Would Expire Before His Appeal is Resolved

Separately, Brock has failed to meet his burden for release under Section 3143(b)(1)(B) because he has not shown that the inapplicability of § 2J1.2(b)(2), or the vacatur of his conviction under § 1512(c)(2), would result in a reduced term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Even without the +3 enhancement under § 2J1.2(b)(2), Brock's sentence will not automatically be shorter because this Court could depart or vary upward from any new Guidelines range. Further, even a sentence within Brock's new Guidelines range (likely, 15 to 21 months) would not entitle him to release. Similarly, in the absence of a conviction for obstruction of an official proceeding, this Court could impose consecutive sentences on the remaining misdemeanor counts, to account for Brock's conduct and history that the Court originally found warranted a 24-month sentence. For these reasons, success on appeal is not likely to result in a reduced sentence, and Brock's motion should be denied.

#### A. The Removal of the Three-Level Enhancement under § 2J1.2(b)(2) Does Not Entitle Brock to Release.

Without the three-level sentencing enhancement, Brock argues (at 2) that his offense level on Count One will decrease from 17 to 14, resulting in a Guidelines range of 15 to 21 months.[13] Brock incorrectly assumes, however, that a lower Guidelines range will automatically result in a reduced sentence. The D.C. Circuit's ruling does not undercut the severity of Brock's crime, and at any resentencing, it would be appropriate for the Court to vary or depart upward from the

---

[13] Brock further contends (at 2) that he will be entitled to a two-level reduction for zero-point offenders under § 4C1.1, resulting in a Guidelines range of 10 to 16 months. On February 7, 2024, Brock filed a Motion to Reduce Sentence based on the two-level reduction for zero-point offenders under § 4C1.1. ECF 113. On February 21, 2024, the government opposed that motion. ECF 114. An order on Brock's motion has not been rendered as of the date of this filing.

Guidelines to account for the uniquely horrifying events of January 6, and Brock's role in those events, when imposing a new sentence.

Indeed, at a resentencing, the government will likely seek the same sentence, accounting for the severity of the crime and the defendant's particular history and characteristics. Moreover, in sentencing Brock to 24 months' imprisonment, this Court fully appreciated the intersection between the guidelines and §3553(a), clearly imposing a sentence "sufficient, but not greater than necessary" to comply with federal law. *See* 18 U.S.C. § 3553(a); Sent'g. Tr. 75. This Court noted that the sentence of 24 months incarceration was consistent for "how long Mr. Brock was in the Capitol, how he entered the Capitol, where he went in the Capitol, how he was dressed, and what he said repeatedly beforehand with respect to his intent and his purposes." *Id*.

### 1. Upward Departure

A "departure" is based on "the framework set out in the Guidelines." *United States v. Murray*, 897 F.3d 298, 309 n.8 (D.C. Cir. 2018). Specific departure statements reflect Commission guidance on what makes a case "atypical" and when departures are "encouraged." *Koon*, 518 U.S. at 94-95. One such circumstance is when an offense results in "a significant disruption of a governmental function." U.S.S.G. § 5K2.7. A departure under this Guideline is warranted in "unusual" circumstances where the Guidelines do not reflect the appropriate punishment for the offense. *Id.* Here, after the D.C. Circuit's ruling, the +3 enhancement does not apply, and the Court must address a situation where the Guidelines do not account for a significant aspect of Brock's conduct or reflect the appropriate punishment. Nor do the Guidelines even account for the unique circumstances of this case—Brock's penchant for violent rhetoric, perverse leadership, and his assistance in disrupting the peaceful transfer of power. In these circumstances, "the court may

10

increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." U.S.S.G. § 5K2.7.

Although by its own terms § 5K2.7 "ordinarily" does not provide for an upward departure when the offense involves obstruction of justice, the obstruction of the Electoral College certification on January 6, 2021, is the type of unusual circumstance that the Sentencing Commission could not have anticipated and that warrants an upward departure. As the commentary explains, departure under § 5K2.7 is appropriate if the disruption of a governmental function is "substantial," meaning "substantially in excess" of the disruption ordinarily involved in an obstruction offense. *See* § 5K2.0 cmt. 3(B)(ii). Individuals, including Brock, who obstructed the certification proceedings on January 6 targeted the peaceful transfer of power, one of the fundamental and foundational principles of our democracy. They were part of a mob that injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. Indeed, the D.C. Circuit Court noted that "Brock's interference with one stage of the electoral college vote-counting process . . . endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *Brock*, 2024 WL 875795, at *15. It was an unprecedented day in American history. Surely few, if any, disruptions of governmental functions have been more "substantial," and the disruption was far "in excess of . . . that which ordinarily is involved in" an obstruction offense (such as impeding a single judicial proceeding). § 5K2.0(a)(3); *id.* cmt. 3(B)(ii). But, following the D.C. Circuit's decision, the seriousness of the crimes committed by defendants like Brock is not adequately captured by the applicable Guideline, § 2J1.2. This Court should accordingly depart upward at any resentencing. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed]

a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"). [14]

### 2. Upward Variance

A "variance" is imposed "outside the guidelines framework" based under the applicable 18 U.S.C. § 3553(a) factors taken as a whole. *Murray*, 897 F.3d at 309 n.8. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308-09 (D.C. Cir. 2018) (cleaned up). At any resentencing, an upward variance would now be warranted to account for the § 3553(a) sentencing factors—specifically, the unique nature, circumstances, and seriousness of the offense, Brock's characteristics, and the need to avoid unwarranted sentencing disparities.

As discussed herein, Brock's obstruction of justice on January 6 was a serious offense that attacked the fundamentals of American democracy. As Judge McFadden stated in a sentencing hearing before the D.C. Circuit decided *Brock*:

> Regardless of whether the 'administration of justice' language actually applies to this situation, I have no doubt that the Commission would have intended for this to apply to substantial interference with an official proceeding like a certification process, which is itself more significant than almost any court proceeding. . . . [Y]ou and your fellow rioters were responsible for substantially interfering with the

---

[14] At any resentencing, the government may argue that additional departure provisions apply. For example, given the dangerous circumstances created by the riot, the Court could depart under § 5K2.14 in addition to, or as an alternative to, departing under § 5K2.7. Section 5K2.14 provides for a departure if "national security, public health, or safety was significantly endangered." Because the assault on the Capitol endangered the safety of the public, police, and elected officials in a way not already captured by Brock's Guidelines range, a departure would be appropriate. *Cf. United States v. Calloway*, No. 21-3057, 2024 WL 925790, at *3 (D.C. Cir. Mar. 5, 2024) (affirming departure under § 5K2.14 where district court found that the defendant "created a serious risk that multiple individuals could have been killed or injured").

> certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources.

*United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87 (emphasis added); *see also United States v. Fonticoba*, 21-cr-368 (TJK), Sent'g Tr. 1/11/24 at 66-67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance would be warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself") (emphasis added); *see also United States v. Bender, et al.*, 21-cr-508 (BAH), Memorandum Opinion (March 6, 2024), ECF 161 at 3 n.1. For this reason, despite finding that the +3 enhancement does not apply (anticipating the holding of *Brock*), Judge McFadden has often varied upward when sentencing defendants in cases where 1512(c)(2) is the lead charge. *See, e.g., United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87; *United States v. Seefried*, 21-cr-287 (TNM), Sent'g Tr. 10/24/22 at 53-54; *United States v. Speed*, 22-cr-244 (TNM), Sent'g Tr. 5/8/23 at 39-42.

Thus, in resentencing Brock—after the D.C. Circuit issues the mandate in his appeal[15]—this Court can and should account for Brock's violent rhetoric and detailed planning in the days and weeks leading up to January 6. This Court said as much during Brock's sentencing hearing, "We have to take into account the rhetoric and intent through his plan of action, to his rules [of] engagement, and through other posts that is reflected in terms of his thinking and his mindset." Sent'g Tr. at 73. This Court further noted, "This kind of conduct that is contemplated and communicated in those detailed, repetitive posts; it's really pretty astounding coming from a

---

[15] "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *see, e.g., United States v. Hallford*, 816 F.3d 850, 855 n.4 (D.C. Cir. 2016) (quoting same). "The district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997).

13

former high ranking military officer. It's detailed. It's persistent. It's consistent. And it's both astounding and atrocious." *Id.*

As this Court explained, Brock was sentenced to 24 months' imprisonment because his pre-January 6 rhetoric was "chilling stuff, and it does reflect a purpose: To stop the certification of the election, particularly if the Congress and Supreme Court don't act in the way that Mr. Brock believed would be appropriate." *Id.* at 71. On January 6, Brock "roamed throughout the Capitol. He was on the Senate Floor. He tried to open – with keys that [he] had acquired apparently – a door to the Senate Lobby. It happened to be the door the Vice President was rushed out of in evacuating the Capitol during these events." *Id*. at 72. Brock was inside the Capitol for 37 minutes. "a long time; not a quick entry and exit by any means." *Id*. And at his sentencing more than two years later, Brock had "no acceptance of responsibility and no showing of remorse whatsoever, zero." *Id* at 73. Thus, an upward variance is necessary to account for Brock's characteristics, and the unique nature, circumstances, and seriousness of his offense.

The need to avoid unwarranted disparities also supports an upward variance. A defendant who substantially disrupts the certification of the electoral college vote causes a harm every bit as great—if not greater—than a defendant who engages in the same conduct in a quasi-judicial or judicial setting. Under *Brock*, two defendants engaging in substantially similar conduct face different Guidelines ranges. Indeed, although the D.C. Circuit resolved *Brock* on a technical linguistics interpretation of a Guidelines enhancement, it nonetheless acknowledged the mismatch between those who violently interfere with a court proceeding as opposed to the certification. *Brock*, 2024 WL 875795, at *15 ("Maybe. But that is a policy argument the government can present to the [Sentencing] Commission.").This Court already addressed the need to avoid unwarranted disparities, noting that Brock's 24-month sentence may already "be at the low end of sentences

14

given to defendants having similar records who have been found guilty of similar conduct." *Id*. at 76. While *Brock* may ultimately yield some re-sentencings, the judges' collective judgment, pursuant to §3553(a), has appropriately understood the obstruction of the election certification as incredibly serious, regardless of the application of a particular Guidelines chapter.

Thus, at any resentencing, this Court may depart or vary upward to impose a significant sentence. Brock's assumption that he would receive a significantly reduced sentence simply because the +3 enhancement no longer applies is not enough to carry his burden under 18 U.S.C. § 3143(b)(1)(B)(iv).

### 3. A Within-Guidelines Sentence Does Not Entitle Brock to Release.

Even if the Court declined to depart or vary upward, Brock is still not entitled to release. He has served approximately 10 months of his sentence. His new Guidelines range is likely 15-21 months, and the severity of his conduct warrants a sentence at the top of that range (21 months)— 11 months more than he has served. Moreover, it is likely that Brock's appeal will be resolved before he completes a sentence anywhere within a Guidelines range of 15 to 21 months. As it currently stands, absent any petition for rehearing or rehearing en banc, the D.C. Circuit will issue the mandate in Brock's case approximately one month from now. *See* Order, *United States v. Brock*, No. 23-3045 (D. C. Cir. Mar. 1, 2024) (ordering the Clerk to withhold issuance of the mandate until "seven days after disposition of any timely petition for rehearing or petition for rehearing en banc"); D.C. Cir. Rule 35(a) (in all cases in which the United States is a party, "the time within which any party may seek panel rehearing or rehearing en banc is 45 days after entry of judgment or other form of decision"). Even if Brock petitions the Supreme Court for a writ of certiorari with respect to the *Fischer* issue—and successfully moves the D.C. Circuit to stay issuance of the mandate pending resolution of his certiorari petition—the government expects that

15

the Supreme Court will decide *Fischer* by the end of June. Thus, Brock's appeal will likely be resolved before he completes a sentence anywhere within a Guidelines range of 15 to 21 months.

      **B.**    **The Pendency of *Fischer* in the Supreme Court Does Not Entitle Brock to Release.**

With respect to Brock's challenge to his § 1512(c)(2) conviction, the D.C. Circuit rejected Brock's arguments and affirmed his conviction. *See Brock*, 2024 WL 875795, at *15. Brock nonetheless argues (at 2-3) that his challenge to the interpretation of § 1512(c)(2) continues to raise a substantial question because he could file a petition for certiorari in the Supreme Court. But Brock's suggestion (at 2) that he might file a petition for certiorari, "if he chooses to do so," is not enough to meet his burden of showing that his appeal continues to raise a substantial question as to his § 1512(c)(2) conviction. This Court should not grant release based on such speculative assertions.

Even assuming that Brock's challenge to his § 1512(c)(2) conviction raises a substantial question, that, if decided adversely to the government, is likely to result in reversal on Count 1, the remedy is not to release Brock now.[16] Instead, § 3143(b) directs the Court to order the

---

[16] Even with a reversal in *Fischer*, Brock has not shown that *his* conviction under § 1512(c)(2) is likely to be reversed. As the D.C. Circuit recognized:

> The evidence of record may also satisfy Brock's evidence-impairment reading of Section 1512(c)(2). Central to Congress's electoral certification process "is the receipt, processing, and verification of evidence"—that is, "the States' certificates of the votes cast for President by their respective electors." *United States v. Brock*, No. 23-3045, 2023 WL 3671002, at *2 (D.C. Cir. May 25, 2023) (Millett, J., concurring). Brock's participation in the January 6th riot caused Congress to adjourn this evidentiary process and prevented members of Congress from accessing and reviewing the certificates. As such, "Brock's conduct necessarily obstructed the handling, submission, processing, and congressional consideration of the evidence of each State's electoral votes. It did so just as much as if Brock had grabbed a pile of state certificates and run away with them." *Id.* at *3. "In that way, Brock's actions 'impair[ed] the * * * availability' of the physical evidence of

(continued . . .)

defendant released only once he has served the amount of time he is likely to serve upon resentencing. 18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*") (emphasis added).

At any resentencing, the Court could consider whether its sentence on the remaining counts was influenced by the vacated obstruction conviction, and could "reconfigure the sentencing plan" to "effectuate its sentencing intent." *United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013). Brock suggests (at 2) that vacatur of his § 1512(c)(2) conviction would favor a lower sentence even for his misdemeanors, but Brock is significantly more culpable than ordinary January 6 misdemeanants, given his "chilling" military-like plans to torture and kill perceived enemies after the election, in combination with conduct on January 6 itself (like his actions on the Senate Floor in tactical gear and his attempts to unlock a secured Capitol door). *See* Sent'g Tr. at 71; 11/15/22 Tr. at 245-54. In the absence of a conviction for obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2), the government's sentencing recommendation could include a request for consecutive sentences to account for both the severity of Brock's conduct on January 6 and for the aspects of his conduct and history that the Court originally found warranted a 24-month sentence. Indeed, the Court would be entitled to consider all of Brock's relevant conduct, including his conduct from the vacated obstruction count. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the

---

electoral votes 'for use in an official [congressional] proceeding[.]' " *Id.* (modifications in original) (quoting 18 U.S.C. § 1512(c)(1)).

*Brock*, 2024 WL 875795, at *5 n.4.

sentence does not exceed the statutory maximum for the crime of conviction."). At least one judge in this District has held that even without the § 1512(c)(2) conviction, the Court would vary upward to impose the same sentence because the "intent to obstruct the proceeding and the nature of the proceeding itself is so important and so critical in terms of deterrence and all the rest and in terms of the specific fact pattern here that that would be my sentence." *See United States v. Fonticoba*, No. 21-cr-638, Sentc'g Hrg. Tr. at 66-67 (TJK); *see also United States v. Bru*, No. 21-cr-352, Sentc'g Hrg. Tr. at 17 (JEB) (explaining that even if the defendant's § 1512(c)(2) conviction was overturned, the sentence would be the same because the Court would vary upward on other counts of conviction and impose the sentences consecutively to achieve the same period of imprisonment).

In short, Brock's assumption that he would receive a reduced sentence simply because Count 1 would be vacated (or the three-point enhancement would not apply) is not enough to carry his burden under 18 U.S.C. § 3143(b)(1)(B)(iv). Brock has failed to carry his heavy burden to rebut the presumption of detention at this stage. *See* 18 U.S.C. § 3143(b). His motion for release pending appeal should be denied.

## CONCLUSION

WHEREFORE, the government respectfully requests that Brock's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney


*/s/ April Ayers-Perez*
APRIL AYERS-PEREZ
DOJ Trial Attorney
TX Bar No. 24090975
450 5th St. NW, Suite 11412
Washington, D.C., 20530
(202) 894-4237
April.AyersPerez@usdoj.gov

**Certificate of Service**

I HEREBY CERTIFY that I have caused a copy of the foregoing motion to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant on this 20th day of March, 2024.

*/s/ April Ayers-Perez*
APRIL AYERS-PEREZ
TX Bar # 24090975
DOJ Trial Attorney